JOHN EVERETT, Administrator of JOHN S. TOUGH, *vs.* JOHN NEFF.

*Practice — Distress — Tenant's Remedy for an unlawful Distress — Property rightfully in the hands of a Receiver, is in the custody of the Law.*

Where a mass of testimony is offered, and objection is made to the admissibility of all and each and every part thereof, there is no error in overruling the objection, if any part of the testimony objected to, be admissible for the purpose for which it was offered.

Where a landlord has levied a distress, and taken thereunder property of sufficient value to satisfy the rent then due, he cannot without the consent of his tenant or other lawful cause, abandon his proceedings, and then levy a second distress for the same rent, upon the same or any other property of his tenant.

Should a landlord abandon his first distress without justifiable cause, and levy a second, the tenant's remedy for the taking under the latter, is trespass, case or trover.

Where property is rightfully in the hands of a receiver, it is in the custody of the Court and cannot be distrained upon, without the permission of the Court by whom the receiver was appointed: in such case the landlord must apply to the Court for an order on the receiver to pay the rent, or for leave to proceed by distress or otherwise.

APPEAL from the Circuit Court for Allegany County.

The facts of the case are stated with sufficient fulness and clearness in the opinion of the Court, together with the first and second exceptions, which were taken in the Court below. In reviewing the third exception which was taken by the plaintiff to the rejection of his prayers, six in number, the Court expressed its opinion only as to the first and second, which are as follows:

1st. If the jury shall find from the evidence in the cause, that John S. Tough in his lifetime, as tenant of John Neff, held the premises describe in the agreement or lease, between John Neff and Douglas Percy and others, dated 30th May, 1854, as assignee of said lease or agreement, and that said Tough at the time of his death, was largely in arrear and indebted to said Neff for rent, which had accrued upon said lease, and that said rent remained due and in arrear until the 17th day of April, 1862; and that the plaintiff was then the lawfully appointed administrator of said Tough; and that said Neff, upon said 17th day of April, 1862, issued the distress warrant of that date, directed to Thomas G. McCulloh, sheriff of Allegany county, offered in evidence, and that all the property now in controversy, and all the other property of said Tough, then on said premises, liable to distress, was seized and taken as a distress for said rent under said warrant, and by authority of said Neff, and that said property was sufficient to pay said rent, and all costs of said distress, appraisement and sale thereunder. And that said Neff afterwards abandoned said distress, without the consent of the plaintiff, and that the defendant afterwards distrained part of the same property taken under the first aforesaid distress, and sold and converted the same to his own use, and that the

property taken under the last aforesaid distress, was the property in controversy in this cause, then the plaintiff is entitled to recover such damage in this cause as the jury shall find that he sustained on account of such second taking.

2d. That if the jury find all the facts above stated in the plaintiff's first prayer, and also, that the agreement between said William Avery and others, petitioner and claimants, and John Neff, now in said cause, was executed by the parties thereto, that said agreement did not bind the plaintiff, and does not operate as an excuse or justification for said abandonment, and did not justify said second distress for said rent, and does not prevent the plaintiff from recovering in this cause, even if they shall also find, that the receivers consented to said agreement, and received said property from said Neff, under said arrangement and agreement, and upon the terms thereof.

From the rulings of the Court below, and the judgment thereon, this appeal was taken by the plaintiff.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*Josiah H. Gordon,* for the appellant:

The first exception taken by the plaintiff below, was to the admission by the Court of certain evidence offered by the defendant. Among other things, the defendant offered to prove by a witness that he had a copy from the books of account of John S. Tough, that said copy showed the amount of coal mined by Tough after the first of February, 1861. We think the Court was clearly in error in permitting testimony to be given of the copy of Tough's books of account, without first giving notice to his administrator to produce the original, and proof of the notice. We think also there was error in admitting the evidence, to which the second exception was taken. What relevancy had the agreement between the appellee and the petitioning claimants, to the issues in

this case? And how was this agreement strengthened by the fact that the receivers appointed by the Court consented to it? On the day of the appointment of the receivers, in virtue of the ninety-ninth section of the first Article of the Code of Public Local Laws, upon the petition of certain persons claiming to be creditors of John S. Tough, deceased, this agreement was executed as a compromise between Neff, who had seized the property, under his first distress, the aforesaid creditors, and the receivers, who undertook to receive the property, sell it and pay Neff's rent, in preference to all other claims, out of the proceeds. The only ground upon which this agreement could have been admissible, was for the purpose of showing such a consent to the abandonment of the first distress, as would justify a second. But this agreement could not have any such effect, because the petitioning creditors were not the only parties interested in this property; indeed only two of the small claims had been established, and that by agreement, for the purpose of testing the question at issue. Everett had a mortgage for a large sum of money upon the property, which was a prior lien to this claim, and he was not consulted about it, and gave no consent to the agreement, and was not bound thereby. And although the Court of Appeals in *Everett, Adm'r, vs. Avery, et al.,* 19 *Md. Rep.,* 136, decided that the receivers were the proper parties to sell the property, it leaves the question of distribution between the mortgagee and the petitioning creditors open for future decision. The whole value of the property was not sufficient to pay Everett's mortgage, and it being the prior lien upon the property, must be preferred to the petitioning creditors, under the sections of the Code referred to; but the appellee contends that section one hundred and two of the first Article of the Code of Public Local Laws, gives priority to these petitioning creditors over the mortgagee, as distributees, notwithstanding the priority of the lien created by the mortgage in point of time.

But such an effect can never be given to such a statute, it

would be against common right, and against the principles of the common law; and if its language even justified such an interpretation of it, the Courts would restrain its operation and give it a construction which would prevent its having such an effect. *Bolton vs. Johns,* 5 *Barr.,* 149; *Tilford vs. Wallace,* 3 *Watts,* 143; *Miller vs. Board of Com.,* 8 *Gill,* 128; *Scuggs vs. Balt. and Wash. R. R. Co.,* 10 *Md. Rep.,* 268.

How can this mortgage be said to operate to the prejudice or disadvantage of these petitioning creditors, when they did the work and furnished the materials with full knowledge of it, and with the understanding that their lien was subject to the mortgage. *Williams et al. vs. Banks et al.,* 11 *Md. Rep.,* 250.

And as to the consent of the receivers, that could not bind any one but themselves, they had no right to the property whatever, and could only hold it subject to the orders of the Court, for the benefit of the successful parties. *In the matter of Rachel Colvin,* 3 *Md. Ch. Dec.,* 289; *Ellicott vs. Warford,* 4 *Md. Rep.,* 80. There are very few acts which a receiver can do without a special leave of the Court; and it certainly is not in his power to authorize a distress to be made upon the property over which he was appointed. Indeed, it is a contempt of Court for a landlord to distrain property in the hands of a receiver without leave; and neither he nor the parties in interest could give such authority without leave. If the agreement were good for any thing, it shows that Neff had bound himself to look to the receivers for his rent, and could not levy a distress. *Edwards on Receivers,* 113 to 149; *Noe vs. Gibson,* 7 *Paige, Ch. Rep.,* 513; *Parker vs. Browning,* 8 *Paige, Ch. Rep.,* 388; *Albany City Bank vs. Shammhorn* 9 *Paige, Ch. Rep.,* 372.

The plaintiff's third exception was taken to the refusal of the Court to grant his prayers, six in number. There was error in rejecting the first prayer, because the defendant had distrained for the same rent on the 17th of April, 1862, and after abandoning that distress, without consent of the plain-

tiff, could not distrain again as he did on the 8th of May, 1862. *Smith's Land. & Ten.* 163, *note* 4; *Wallis vs. Savill et al.*, 2 *Lutwyche*, 1532; *Lear vs. Caldecott*, 45 *Eng. Com. Law.*, 128; *Smith vs. Goodwin*, 4 *B. & Ad.* 413; *Bagge vs. Mawby*, 8 *Ex'ch.*, 641; *Dawson vs. Cropp*, 50 *Eng. Com. Law*, 961; *Quinn vs. Wallace*, 6 *Wharton*, 452.

The second and third prayers should have been granted for the reasons already stated, and authorities cited.

[From the views presented and the conclusions reached by this Court, the further discussion of the prayers is omitted.]     *Reporter.*

*Thomas J. McKaig, Jr.*, and *Thomas J. McKaig*, for the appellee:

The Court below ruled correctly in rejecting the first, second and third prayers of the appellant.

1st. Because at the time of the first distress, 17th of April, 1862, the property being in the hands and possession of the receivers, it was *in custodia legis*, and could not have been legally distrained, and therefore said distress was a mere nullity. *Taylor on Landlord and Tenant, sec.* 594.

2d. Because the agreement of the petitioners and claimants, who were legally entitled to this property, with John Neff, to pay the rent as therein set forth, rendered the abandonment of the distress by Neff legal and justifiable. *Lear vs. Edmonds*, 1 *B. & Ald.*, 157. *Opinion of Abbot, J.; Lingham vs. Warren*, 2 *Brod. & B.*, 36; *Hudd vs. Ravenor*, 2 *Brod. & B.*, 662.

3d. Because the fact whether Everett was a party to said agreement or bound by it, has nothing to do with the rightful abandonment of said distress by Neff. The petitioners and claimants, and not Everett, were legally in possession of said property at the time of said distress, and the agreement made having been satifactory to Neff, he was justified in abandoning the distress. The fact that, subsequently to this arrangement, Everett, by his own motion and act, removed

the property from the possession of the receivers and peti-
tioners into his own, thereby destroying and rendering of
no effect the said agreement, justified Neff in pursuing his
remedy by distress against the property of Tough in the pos-
session of Everett his administrator.

MILLER, J., delivered the opinion of this Court.

This action of trespass for taking and carrying away certain
mine cars and mining implements, was instituted by the ap-
pellant against the appellee, and tried on issue joined on the
plea of *non cul.* The record is very confused and defective,
and it becomes necessary to state substantially what we consi-
der to be the undisputed facts in the case. Tough in his life
time was assignee of a lease of certain mining lands and coal
mines, of which Neff was the owner and lessor. By the lease
and its modifications, the lessees were to pay Neff a certain
rent for the surface of the land and a rent or royalty of fifteen
cents per ton for the coal mined thereunder. The lease was
assigned to Everett, who on the 4th of December, 1857, sold
and assigned the same to Tough for $6,000. Tough con-
tinued to work the mines under the lease till his death in Sep-
tember, 1861, when Everett was appointed his administrator,
took possession of his personal estate, and under order of the
Orphans' Court advertised the same for sale. On the 26th of
March, 1862, Avery and others filed a petition in the Circuit
Court for Allegany county, alleging that Tough died largely
indebted to them and others, for wages due for work and
labor done for him in his business of mining, and praying for
an injunction to restrain the administrator from selling the
property and for the appointment of receivers to take charge
thereof. This petition was filed under the miners' law for
Allegany county, contained in the Code of Public Local Laws,
Art. 1, secs. 99 to 103, inclusive, and its allegations will be
found stated more at length in 19 *Md. Rep.*, 136. The in-
junction was granted March 30th, and on the 7th of April,
Everett, the only party made defendant, filed his answer

claiming the right to administer the assets, and also claiming a prior lien on the property by virtue of a mortgage from Tough, of the 4th of December, 1857, to secure part of the $6,000, purchase money for the assignment of his interest in the lease, and then moved to dissolve the injunction. On the 17th of April, Neff issued a distress warrant for rent in arrear and due by Tough under this lease, and all the property on the premises including that mentioned in the declaration in this case was seized and taken by the bailiff thereunder, and a sale thereof advertised to take place on the 23d of April. The account accompanying this warrant is for rent in arrear to the amount of $1,426.80, and the property taken was appraised at $1,500. On the 22d of April, the Circuit Court refused the motion to dissolve and passed an order appointing McKaig and Perry receivers, as prayed in the petition. On the same day an agreement was made between and signed by Neff, and Mr. Devecmon, as solicitor and attorney for the petitioning claimants, which recites the appointment of the receivers; that Neff had taken under his distress the entire movable personal estate of Tough, and had advertised a *sale thereof* to take place the *next day,* and that all the other personal property of Tough consisted of his interest in the lease of these coal lands and mines, and states that in consideration that Neff would *forbear* to sell the property levied on under his distress and *suffer* the whole to go into the hands of the receivers, and reduce the rent or royalty reserved to him under the lease to ten cents per ton, in favor of the purchasers of the lease from the receivers, the petitioners agree that Neff shall be *first paid* by the receivers out of the proceeds of the property sold by them, *all rent* due him as specified in his warrant of distraint with costs thereof, and in consideration of this agreement on the part of the petitioners, Neff on his part agrees *to forbear* selling the property under his distress, and that the receivers should *take possession* of and sell the same, and also the lease, and to reduce the royalty as proposed; and it was further agreed that if Neff's claim for rent

is not paid in full as a prior lien over and in preference to all other liens, out of the proceeds of sales made by the receivers, then this agreement should be void, and any sale of the lease made by the receivers at the reduced royalty should be absolutely null and void. The receivers assented to this agreement, and on the next day, the 23d of April, filed their bond, and received possession of the property from Neff under said agreement. Everett then appealed from the orders granting, and refusing to dissolve the injunction, and appointing the receivers, and filed his appeal bond on the 30th of April. He then applied to the Court for an order on the receivers to return the property to him, and an order to that effect was passed on the 5th of May, under which the property was delivered back to him. On the 8th of May, Neff issued a *second* distress warrant for the *same rent,* under which the bailiff seized in part the same property which had been taken under the previous one, including that now in controversy, and sold the same thereunder to Neff. This suit was then instituted by Everett on the 19th of May, 1862.

*First Exception:* The plaintiff having proved the taking of the property by Neff or by his authority and its value, offered in evidence the proceedings in the Circuit Court on the petition of *Avery and others, vs. Everett,* and then rested. The defendant then gave in evidence the lease and its modifications, and the assignments thereof, and then offered to prove by the witness Parker, that he had a copy of the books of accounts of Tough, showing the amount of coal mined by him after February 1st, 1861, and also offered in evidence the distress warrant of the 8th of May, and the proceedings thereon. To the admissibility of all said evidence and to each and every part thereof the plaintiff objected, but the Court overruled the objection and permitted the evidence to go to the jury.

There was no error in this ruling if any part of the testimony objected to was admissible The objection is a general one to *all* and each and every part of the testimony. At this

stage of the trial, the proceedings under the distress warrant of the 8th of May, were clearly admissible. No objection was taken to their regularity and no evidence had then been given of any previous distress. They were also evidence in mitigation of damages (if vindictive damages should be claimed by the plaintiff,) showing the taking to have been made under process of law and not maliciously. If the plaintiff designed to raise the question of the admissibility of the testimony of Parker, and the copy from the books of account, he should have confined his objection to that particular evidence. We affirm the ruling in this exception upon the authority of *Budd vs. Brooke,* 3 *Gill,* 220; *Emory & Gault vs. Owings,* 3 *Md. Rep.,* 178; *Pettigrew vs. Barnum,* 11 *Md. Rep.,* 434; *and Morrison vs. Whiteside,* 17 *Md. Rep.,* 452.

*Second Exception:* The plaintiff then offered in evidence the distress warrant and papers of the 17th of April, and proved that the bailiff under this warrant seized all the personal property belonging to Tough at the time of his death, on the demised premises, including all that was subsequently taken and a good deal more. The defendant then offered in evidence the agreement between Neff and the petitioning claimants, before stated, and proved that the receivers consented to this agreement and agreed with Neff that he should abandon his distress, and that the receivers should and did receive from Neff, under and on the terms of this agreement, the property which he had taken under his said first distress. The plaintiff objected to the admissibility of the agreement and of the evidence of consent thereto by the receivers, but the Court overruled the objection and allowed the evidence to go to the jury. This ruling is also correct, for if the testimony was admissible for any purpose there was no error in admitting it. It was competent for the defendant to show the agreement and the assent of the receivers thereto, in explanation of the motives under which he acted in abandoning his first distress, and in mitigation of damages, in case vindictive damages should be claimed by the plaintiff. It tended to

---

---

show he did not act maliciously in making the second distress, but from a supposed right so to act. The legal effect of this agreement and assent, whether constituting a justifiable cause for the abandonment of the first distress, so as to enable him lawfully to levy a second one is an entirely different question, which was properly raised by the prayers.

*Third Exception:* This exception taken to the refusal to grant the plaintiff's prayers, six in number, presents the main question in the case.

The law is well settled that when a landlord has levied a distress, and taken thereunder property of sufficient value to satisfy the rent then due, he cannot, without the consent of his tenant or other lawful cause, abandon his proceedings and then levy a second distress for the same rent, upon the same or any other property of his tenant. "If there is a fair opportunity and there is no lawful or legal cause why he should not work out the payment of the rent, by reason of the first distress, his duty is to work it out by the first distress, and he cannot distrain again. * * * The principle upon which, as a general rule, a landlord cannot distrain twice is, that he must not vex his tenant by the exercise upon two occasions of this summary remedy." 8 *Excheq.,* 648, *Bagge vs. Mawby;* 50 *Eng. C. L. Rep.,* 961, *Dawson vs. Cropp;* 45 *Eng. C. L. Rep.,* 123, *Lear vs. Coldecott;* 6 *Whart.,* 452, *Quinn vs. Wallace.* The same authorities show that the tenant's remedy for the taking under the second distress is trespass, case or trover. The question then is, was there in this case any justifiable cause shown for the abandonment of the first distress? The agreement between Neff and the petitioning claimants, and the assent of the receivers thereto, do not, in our opinion constitute a sufficient excuse. Neff was not a party to the proceedings instituted by these petitioners; there is no pretence that Everett ever assented to this arrangement, and no agreement between Neff and these claimants could affect, injuriously, his rights, nor could the assent of the receivers thereto have any such effect. The duty

of the receivers was prescribed in the order of their appointment, and by the provisions of the law under which they were to act, (*Code of Public Local Laws, Art.* 1, *sec.* 102,) and neither of these gave them any power or authority to enter into, or assent to any such arrangement. They were charged with the simple duty of taking possession of the property, selling it under the Court's direction, and holding the proceeds subject to the Court's order, and were required to perform this duty promptly and diligently. But it is said this property was at the time *in custodia legis*, and therefore the first distress was a mere nullity, and this justified its abandonment. This position presents a point which is by no means free from difficulty. We have given it careful consideration, and have reached the conclusion, that it cannot be sustained. The petition was filed before the distress warrant was issued, but the receivers were not appointed until afterwards, and not until the day preceding that on which the sale was to take place under the distress. The agreement spoken of was then made, assented to by the receivers, and *possession* of the property delivered to them by Neff, under and in virtue of it, on the day of sale. The receivers were not, therefore, at the time of seizure, nor on the day of sale in actual possession of the property, and only obtained it on that day under the agreement. Their mere appointment did not, as we think, place the property, as against a stranger to the proceedings, in possession, and claiming the right to retain and sell it, *in custodia legis.* Actual possession was necessary to accomplish this. The authorities speak of the appointment *and possession* by the receivers as necessary in order to place the property in the custody of the Court. In *Taylor's Landlord and Tenant, sec.* 594, cited by the appellee's counsel on this point, it is said, " where property is rightfully *in the hands* of a receiver, it is in the custody of the Court, and cannot be distrained upon without the permission of the Court by whom the receiver was appointed;" in such case the landlord must apply to the Court for an order on the

receiver to pay the rent, or for leave to proceed by distress or otherwise. In *Noe vs. Gibson*, 7 *Paige*, 515, Chancellor Walworth declared it to be " well settled that after a receiver has been appointed, *and has taken the rightful possession* of the property, it is a contempt of Court for a third person to attempt to deprive him of that possession by force, or even by a suit or other proceeding, without the permission of the Court by whom the receiver was appointed." In *Parker vs. Browning*, 8 *Paige*, 391, it was held that if at the time of the appointment of the receiver, " the property is in possession of a third person who claims the right to retain it, the receiver must either proceed by suit in the ordinary way to try his right, or the complainant should make such third person a party to the suit, and apply to have the receivership extended to the property in his hands, so that an order for the delivery of the property may be made, which will be binding upon him, and which may be enforced by contempt if it is not obeyed." In 2 *Story's Eq.*, sec. 833 *b*, it is said that in such a case " the Court will not protect the officer who attempts by violence to obtain possession, any further than a Court of law will protect him, his right to take possession of property of which he has been appointed the receiver being unquestioned." And in *Fairfield vs. Weston*, 2 *Sim. & Stu.*, 96, the Vice Chancellor Sir John Leach says: " The receiver is, *as between the parties to the suit*, to be considered as appointed from the date of the order of reference to the master, and after the date of that order, the *defendant* was not at liberty to exercise any right of ownership upon the estate without the authority of the Court." In the present case the appellee does not appear to have acted in the abandonment of his first distress, by any constraint put upon him by the receivers, or by reason of any attempt on their part to take the possession of the property from him. It seems to have been conceded he had the right to hold on and sell under his distress, and he voluntarily entered into the agreement with the petitioning claimants by which he "*forbore*" to sell under his distress, in *consideration*

that he was to be paid the full amount of his rent, out of the proceeds of the property sold by the receivers, in, preference to all other liens on the property, and therefore *permitted* them to take possession: and to this agreement the receivers assented and thereby obtained the possession. Under such circumstances we think his abandonment was voluntary and without justifiable cause, and therefore the second distress was illegal. His remedy, if he has sustained any damage by giving up his first distress, is upon the agreement which he thus voluntarily made. It follows from these views, the Court below was in error in refusing the plaintiff's second prayer. The first prayer is erroneous in placing the plaintiff's right to recover, simply upon the abandonment of the first distress, "without the consent of the plaintiff." This, as we have shown, is not law, for the abandonment may be made even without the tenant's consent, if it be for a lawful cause. If the facts contained in the second prayer had been embodied in the first, it would correctly have stated the law of the case. We forbear expressing any opinion upon the other prayers, inasmuch as the judgment must be reversed, and in the trial under the *procedendo*, the points raised in these prayers will become unimportant, because the plaintiff, by this decision, will be relieved from presenting them.

> *Judgment reversed and*
> *procedendo awarded.*

(Decided 12th February, 1868.)