# OUTERBRIDGE HORSEY COMPANY

*vs.*

## WILLIAM MARTIN ET AL.

*Money Taken from Prisoner—Custody of the Law.*

When money is lawfully taken from a prisoner by the sheriff at the time of his arrest, it is *in custodia legis,* and subject to the order of the court having criminal jurisdiction of the offence, and neither by attachment proceeding nor by injunction should such court's power of disposition of the money be taken away or interfered with.

*Decided January 9th, 1923.*

Appeal from the Circuit Court for Frederick County, In Equity (URNER, C. J., and WORTHINGTON, J.).

Bill by Outerbridge Horsey Company against William Martin and others. From a decree for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Charles McC. Mathias* and *Leo Weinberg,* for the appellant.

*Reno S. Harp* and *William Curran,* with whom was *Alban M. Wood* on the brief, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Frederick County, sitting in equity, dated the 25th day of February, 1922, dissolving a preliminary injunction which had been previously granted and dismissing the plaintiff's bill of complaint.

The object and purpose of the proceeding was to invoke and obtain the aid of a court of equity, by way of injunction, to impound, for the benefit of the plaintiff, certain money in the hands of the sheriff of Frederick County, and in the hands of a justice of the peace of that county, which is alleged to be the property of the plaintiff.

The bill in substance alleges that the plaintiff is a corporation, duly chartered and organized under the laws of the State of Maryland, and that as such it owns a distillery, and bonded and free warehouses, located near Burkittsville, Frederick County, which had 2,400 cases of whiskey therein at the time of the larceny mentioned in the bill, that the defendants, William Martin and Nettie Martin, his wife, feloniously did steal, take, and carry away 1,200 cases of this whiskey, and did unlawfully convert the same or part thereof into cash.

The bill further alleges that the defendants, William and Nettie Martin, were arrested, charged with the larceny of the whiskey, and brought to the jail at Frederick, Maryland, where William Martin is now confined, and that Nettie Martin has been released on bail, and, as security for her further appearance, deposited the sum of two thousand dollars in cash with J. Grahame Johnson, a justice of the peace for Frederick County, also one of the defendants in the case; that William Martin, at the time of his apprehension and arrest, had with him the sum of four thousand dollars, which the defendant, William O. Wertenbaker, sheriff of Frederick County, Maryland, has placed in the custody of the Frederick Town Savings Institution, Frederick, Maryland; that the sum of four thousand dollars, in the hands of the sheriff of Frederick County, and the sum of two thousand dollars, cash bail deposited with J. Grahame Johnson, justice of the peace, represent the proceeds from the unlawful sale and wrongful conversion of the whiskey, so feloniously stolen and taken by the defendants, William Martin and Nettie Martin, his wife.

The bill then avers that the sums of money mentioned, being in the hands of public officials, cannot be attached or

otherwise seized under legal process, and the plaintiff is
without adequate remedy, except through the aid of a court
of equity, and that the sum of money, arising out of the un-
lawful sale of the plaintiff's property, rightfully belongs to
the plaintiff and should be impounded for its benefit, to sat-
isfy its claim; that unless the plaintiff is granted this measure
of relief, it will be left entirely without redress in the domes-
tic tribunal against the defendants, although they have assets
within the jurisdiction which, in equity and good conscience,
should be delivered to the plaintiff.

The bill also avers that William Martin and Nettie Martin,
his wife, are insolvent, are not citizens of the State of Mary-
land, and they have no property or assets, save and except
those herein mentioned, out of which your orator could real-
ize a judgment obtained against them, and they are bootleg-
gers, and notorious characters, who, once they are permitted
to have possession of the funds, will abscond with and dissi-
pate the same to the irreparable financial loss and injury of
the plaintiff.

The prayer of the bill, is: (1) That plaintiff's rights be
declared and enforced in the premises. (2) That the sums
of money, referred to in the bill of complaint, be impounded
for the benefit of the plaintiff. (3) That the defendants,
and each of them, their agents, attorneys, representatives and
assigns be prohibited from using, spending, paying out, re-
ceiving, hypothecating, assigning or otherwise disposing of
said sums of money, until the further order of the Court, in
the premises, and (4) That the plaintiff have such other and
further relief, as the nature of the case may require.

The defendants demurred to so much of the bill as sought
injunctive relief, and to the jurisdiction of the court, and, by
answer, denied the material allegations of the bill.

Upon this state of facts, the court below held that, inas-
much as the money in question was in the hands of public
officials and thus was in the custody of the law, it could not be
reached by a separate proceeding, as was sought in this case.

The general rule of law applicable to the facts of the case will be found settled by a long line of well considered cases in this State, as well as in other jurisdictions.

In *Cromwell et al.* v. *Owings,* 7 H. & J. 61, it is said: "But it does not depend upon the question, whether the property was wrongfully taken or not, which can only be determined at the trial, but whether it was in the custody of the law or not; and that once established, the possession cannot be disturbed, but the party injured is left to seek his remedy by an action of trespass or trover, or to wait until the goods are sold, and then to regain his possession by a writ of replevin against the purchaser, in whose hands they cease to be in the custody of the law." See *Farmers Bank* v. *Beaston,* 7 G. & J. 421; *Buckey* v. *Snouffer,* 10 Md. 149; *Everett* v. *Neff,* 28 Md. 176; *Ginsberg* v. *Pohl,* 35 Md. 505.

The reason of the rule, as stated by the courts, is that when a court acquires jurisdiction of goods, chattels, or money, in one case, the orderly process of the court requires that it shall be permitted to determine the rights of the parties in that case without the interference or interruption of a conflicting jurisdiction or of a separate and distinct action or proceeding.

The doctrine of non-interference, to prevent conflict of authority of jurisdiction, which is established in cases of civil practice, it will be seen, is also applicable to criminal cases, and the procedure thereunder.

In *Holker* v. *Hennessey,* 141 Mo. 527, 39 L. R. A. 165, the Supreme Court of Missouri said that if the money and property were taken from the person of the prisoner by authority of law, which the sheriff would be estopped to deny, it was in the custody of the law and subject to the order of the court in which the criminal proceedings were pending and was not, at least until after conviction, subject to attachment at the suit of a creditor of a prisoner. The officer, in such case, is the mere agent of the court and custodian of the property, and to permit an interference with his possession, would be to interfere with the jurisdiction of the court, and divert the property from the purposes for which it is held. *Marvin*

v. *Hawley,* 9 Mo. 382; 8 *Am. & Eng. Enc. of Law,* 1137; 21 *Corpus Juris,* 108 and 109; *Rex* v. *Kinsey,* 7 C. & P. 447; *Bishop, New Crim. Prac.,* vol. 1, sec. 211.

We, therefore, concur in the conclusion reached by the court below, that where money is lawfully taken from a prisoner by the sheriff at the time of his arrest, it is *in custodia legis,* and subject to the order of the court having criminal jurisdiction of the offense, and that neither by attachment proceeding nor by injunction should the criminal court's power of disposition of the money be taken away or interfered with.

For the reasons stated, we think the prayer of the plaintiff's bill, in this case, was properly denied as to both funds, and the court below committed no error in dissolving the preliminary injunction and dismissing the plaintiff's bill. It follows, therefore, that the decree of the Circuit Court for Frederick County, dated the 25th of February, 1922, will be affirmed.

*Decree affirmed, with costs.*