## WITBECK v. THE ELECTRO NUCLEAR SYSTEMS CORPORATION et al.

[No. 39, September Term, 1966 (Adv.).]

564

*Decided July 22, 1966.*

The cause was argued before HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Joseph A. Mattingly* for the appellant.

*John C. Eldridge, Attorney, Department of Justice,* with whom were *John W. Douglas, Assistant Attorney General, Morton Hollander, Attorney, Department of Justice,* and *Thomas J. Kenney, United States Attorney,* on the brief, for United States of America, one of the appellees. No brief filed by the Electro Nuclear Systems Corporation, the other appellee.

BARNES, J., delivered the opinion of the Court.

The Electro Nuclear Systems Corporation, one of the appellees (the corporation) had its principal office in Minnesota, but engaged in business in Maryland during 1963 and prior thereto, performing defense contracts for the United States, the other appellee. Norman C. Witbeck, the appellant and petitioner below (Witbeck) was employed by the corporation and rendered services to it for which he was not paid. Witbeck sued the corporation to recover for these services and on May 24, 1963 obtained a default judgment against the corporation for $3,412.03 plus interest and costs.

The corporation had apparently ceased to function as a business in Maryland in 1963 and in 1964 withdrew as a corporation qualified to do business in Maryland. The corporation had no assets in Maryland other than possibly money due from the United States under defense contracts and still held by the United States. The judgment not having been paid, Witbeck on July 1, 1963 filed a petition in the Circuit Court for Montgomery County alleging the recovery of the judgment, the absence of assets of the corporation other than payment due the corporation by the United States which Witbeck could not garnish, but further alleging that the United States would recognize a receiver appointed by the court because of comity and would pay the money due the corporation to such a receiver from which Witbeck's judgment could be paid. Witbeck prayed that a receiver be appointed unless cause to the contrary be shown by a day certain, and that a receiver be appointed "to collect money not exceeding $3700.00" due the corporation out of which sum the receiver would pay the costs of suit, pay

Witbeck his judgment and turn over any balance to the officers of the corporation. On July 2, 1963, a show cause order was issued, and no cause having been shown, on July 19, 1963 the lower court passed an order appointing E. Harold Patterson receiver for the corporation and providing that "he shall collect money due to Electro Nuclear Systems Corporation in an amount not to exceed $3700.00 and he shall retain that money in a safe depository pending further order of this Court; provided that the said E. Harold Patterson shall not undertake the office of receiver until he has first posted bond with the Clerk of this Court in the amount of $5000.00." This bond was duly posted.

Thereafter, Mr. Patterson, as the limited receiver under the order of July 19, 1963, filed suit against the United States in the United States Court of Claims under the Tucker Act, 28 U.S.C. § 1419 *et seq.*,[1] seeking to recover $3700.00. Among other grounds, the United States defended this suit by relying upon the provisions of the Assignment of Claims Act, 31 U.S.C. §203, which rendered void the transfer and assignment of claims upon the United States except under certain circumstances and asserting that the provisions of that Act precluded the payment of the money to the limited receiver. The Court of Claims on December 17, 1965 rendered an opinion in the case pending before it (*Patterson v. United States,* 354 F. 2d 327), in which it stated the purposes of the Assignment of Claims Act, reviewed the relevant cases and concluded that it would not violate the provisions of the Act to order the money due from the United States paid to a general receiver but it would violate those provisions to order the money paid to a limited receiver. The Court of Claims announced that the case before it would be held in abeyance "to afford plaintiff an opoprtunity to obtain an order from a court of competent jurisdiction appointing him general receiver to receive and collect all amounts that may be due Electro on the Government contracts", and if Mr. Patterson, the limited receiver, failed to be appointed as a general rceiver, his action would be dismissed. 354 F. 2d at 332.

---

1. The Tucker Act waives the sovereign immunity of the United States from suit for contractual claims.

Three days after the decision of the Court of Claims, i.e., on December 20, 1965, Mr. Patterson, the limited receiver and Witbeck filed a petition in the Circuit Court for Montgomery County praying that the court amend its order appointing Mr. Patterson from "the limited purpose of collecting $3700.00 to appointing him general receiver of the Electro Nuclear Systems Corporation to receive and collect all amounts that may be due the * * * Corporation on United States Government Contracts and to hold the same in trust subject to the orders of the Circuit Court for Montgomery County, Maryland for the benefit of all recognized creditors of the * * * Corporation and others who may be entitled * * *." The Circuit Court passed a show cause order on December 22, 1965 providing for a hearing on January 17, 1966 as to why the petition should not be granted. At that hearing the United States appeared and requested a continuance so that it could file a petition to intervene. This continuance was granted orally by the lower court. A voluntary petition was filed on January 25, 1966 in the United States District Court for the District of Minnesota to have the corporation adjudicated a bankrupt and the notice of the first meeting of creditors was sent out on January 27, 1966 for the first meeting of creditors to be held on February 24, 1966. Thomas H. Lovett, Jr., was duly appointed as trustee for the bankrupt corporation on February 24, 1966 and has duly qualified as trustee.

On February 2, 1966 the United States filed its petition to intervene and on the same day filed its motion as an intervenor to preclude the appointment of a general receiver and its brief in support of that motion. Witbeck on February 4 filed an "opposition" to the petition to intervene, a motion *ne recipiatur* as to the motion to preclude filed by the United States as intervenor and a petition for a final order appointing a general receiver. On February 14, the United States filed a document titled "Intervenor's Reply to Petitioner's Opposition to Intervenor's Petition to Intervene" and on March 1 a hearing was held on all outstanding motions. At this hearing the United States offered in evidence a letter from the Attorney General of the United States authorizing the federal government's petition to intervene, as well as a copy of the order appointing the trustee in bankruptcy.

On March 18, 1966, Judge Pugh filed an opinion and order dated March 16, 1966 reciting that the United States had intervened in the case and stating that the "Court is of the opinion that no further proceedings should take place in this case because the defendant corporation is in bankruptcy * * *", and passed an order denying Mr. Patterson's petition to be appointed a general receiver for the corporation. This appeal was timely entered from that order.

Two questions are presented to us for decision:

(1) Did the adjudication of the corporation as a bankrupt and the appointment of a trustee in bankruptcy preclude the lower court from appointing a general receiver?

(2) Did the trial court commit reversible error in permitting the United States to intervene and treating it as an intervenor without the entry of a formal order granting the United States leave to intervene?

We have concluded that the first question should be answered in the affirmative, the second question in the negative and that the order filed March 18, 1966 should be affirmed.

## (1)

It is well established that the Federal Bankruptcy Act, 11 U.S.C. §§ 1 *et seq.* passed pursuant to the power granted the national government by Article 1, Section 8 of the Constitution of the United States is paramount and exclusive and that after a petition in bankruptcy is filed in the United States District Court and an adjudication made, the jurisdiction of the bankruptcy court over the property of the bankrupt as of the date of the petition extends to all of such property, wherever situated. *Robertson v. Howard,* 229 U. S. 254, 33 S. Ct. 854, 57 L. Ed. 1174 (1913). Our predecessors held in 1869 that the Bankruptcy Act of 1867 suspended the operation of the Maryland Insolvent Laws. *Van Nostrand v. Carr,* 30 Md. 128. See also *Newman v. Fisher,* 37 Md. 259 (1873). The same principle is applicable to the Bankruptcy Act of 1898. *Fisher v. Medwedeff,* 184 Md. 167, 40 A. 2d 360 (1944), *cert. denied* 325 U. S. 863, 65 S. Ct. 1198, 89 L. Ed. 1984. See also *Blaustein v. Aiello,* 229 Md. 131, 182 A. 2d 353 (1962), *cert. denied* 371 U. S. 233, 83 S. Ct. 326, 9 L. Ed. 2d 494.

The principle that other courts should not exercise jurisdiction inconsistent with the paramount and exclusive jurisdiction of the federal bankruptcy court has been applied to state general receiverships. See *In re Watts and Sachs,* 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933 (1903) involving a prior Indiana state court general receivership of an insolvent corporation, a later adjudication in bankruptcy and an appointment of a receiver by the bankruptcy court. The Supreme Court of the United States held that the bankruptcy proceedings terminated the jurisdiction of the state court and required the state court receiver to turn over the insolvent's property to the bankruptcy receiver. Mr. Chief Justice Fuller, for the Supreme Court, stated:

"And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the Federal courts in bankruptcy, when properly involved, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive." (Page 27 of 190 U. S.; page 724 of 23 S. Ct.; page 941 of 47 L. Ed.)

See also *Gross v. Irving Trust Co.,* 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243 (1933) in which the Supreme Court held that the Court of Chancery of New Jersey had no power subsequent to the adjudication in bankruptcy to fix the compensation of the general receiver appointed by the Court of Chancery for an insolvent corporation.

Witbeck relies on four cases in the Supreme Court which have sustained state court enforcement of claims notwithstanding the institution of federal bankruptcy proceedings. These cases are: *Metcalf Brothers & Company v. Barker,* 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122, (1902); *Straton v. New,* 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060 (1931); *Connell v. Walker,* 291 U. S. 1, 54 S. Ct. 257, 78 L. Ed. 613 (1934) and *Emil v. Hanley,* 318 U. S. 515, 63 S. Ct. 687, 87 L. Ed. 954 (1943). In all of these cases the provisions of the Bankruptcy Act did not affect the property right being enforced in the state court proceeding,

so that the continuance of the state court proceeding was not inconsistent with the exclusive jurisdiction of the bankruptcy court. For example, in *Straton v. New, supra* creditors obtained judgments which became liens on the real property of the debtor and instituted suits in the state courts to enforce the liens more than four months prior to bankruptcy. As these liens were saved from the operation of the Bankruptcy Act by its express terms and the state enforcement proceeding was instituted prior to bankruptcy, the Supreme Court held that the state court proceeding could continue. The same rule was applied to a mortgage lien which attached to the debtor's property more than four months prior to bankruptcy and the foreclosure proceeding and appointment of a limited receiver occurred prior to bankruptcy. *Emil v. Hanley, supra.*

These cases are not in our opinion applicable to the case at bar as neither Witbeck nor the limited receiver ever had a lien upon the funds sought to be obtained from the United States by a proceeding in the Court of Claims prior to the bankruptcy of the corporation. As the claim of the corporation against the United States is a chose in action and not real property, it is clear that no lien attached from the mere obtention of the judgment. Maryland Rule 620 a. See *Messinger v. Eckenrode,* 162 Md. 63, 67-69, 158 Atl. 357 (1932) for an interesting account of the development by statute of the lien of judgments upon the debtor's real property.

Money in the hands of the United States is not subject to garnishment or attachment as the United States cannot be sued without its consent (see *Maricopa County, Arizona v. Valley Nat. Bank of Phoenix, Ariz.,* 318 U. S. 357, 63 S. Ct. 587, 87 L. Ed. 834 (1943)), and no attachment or garnishment was attempted in the case at bar. We, therefore, have no question before us of any inchoate lien upon that money arising from a garnishment proceeding. Cf. *Deibert v. State,* 150 Md. 687, 691, 133 Atl. 847 (1926). The Tucker Act, 28 U.S.C. §1491, *et seq.* does not give any lien to a claimant who proceeds under it. We conclude that neither Witbeck nor the limited receiver had any lien, inchoate or otherwise, upon the money in the hands of the Treasurer of the United States.

A receiver appointed by the Maryland courts does not re-

ceive title to the debtor's property. As our predecessors stated in *Gaither v. Stockbridge*, 67 Md. 222, 225, 9 Atl. 632, 633 (1887) :

"His [the receiver's] appointment does not change the title to the property, or create any lien upon the same, in favor of any of the parties interested; his holding being for the benefit of the party who may be ultimately determined to be entitled."

Witbeck strongly urges upon us the ingenious argument that the limited receiver has "constructive possession" of the money owed the corporation by the United States by virtue of filing the action in the Court of Claims and relies on *U. S. v. Borcherling*, 185 U. S. 223, 22 S. Ct. 607, 46 L. Ed. 884 (1902). In the *Borcherling* case, the Supreme Court affirmed a decision of the Court of Claims (*Borcherling v. U. S.*, 35 Ct. Cl. 311 (1900)) in which the United States was required to pay the state court receiver the same amount it had erroneously paid the debtor after the appointment of the state court receiver to collect the judgment against the debtor. The Supreme Court was careful to point out that under the laws of New Jersey title to the money due the debtor as well as the title to other property passed to the state court receiver and after his appointment the debtor was divested of all his right, title and interest in his personal property and choses in action wherever located and the state court receiver became clothed with the rights thus divested. However, in Maryland the law is clear that title to the personal property and choses in action of a debtor does not pass to a receiver of the debtor. *Obrecht v. Ensor*, 162 Md. 391, 159 Atl. 899 (1932) ; *Everett v. Neff*, 28 Md. 176 (1868) ; *Farmers' Bank of Delaware v. Beaston*, 7 G. & J. 421 (1836). There must be a taking of actual possession of personal property. The mere filing of an action in the Court of Claims by the limited receiver would not give that receiver possession, either actual or constructive, over money held by the United States, as the right to the money is to be determined in that very action and the Court of Claims has ruled that the limited receiver is not entitled to receive the money. As we have already pointed out, the appointment of even a general receiver

does not in Maryland change the title of the debtor's property or create any lien upon it. *Gaither v. Stockbridge, supra.* We conclude, therefore, that Witbeck cannot avail himself of the principle enunciated by *Metcalf Brothers & Company v. Barker, Straton v. New, Connell v. Walker* and *Emil v. Hanley,* all *supra.* The Chancellor properly refused to appoint a general receiver subsequent to the filing of the petition in bankruptcy by the corporation and the adjudication in bankruptcy.

The United States urged upon us that even if the Chancellor had the power to appoint a general receiver, he properly exercised his discretion in refusing to make such an appointment under the circumstances of the present case. In view of our opinion that the Chancellor had no right to make the appointment, as a matter of law, we find it unnecessary to pass upon the question of a proper exercise of discretion by the Chancellor in refusing to make the appointment.

## (2)

The final matter for our consideration is whether the Chancellor committed reversible error in permitting the United States to intervene and in treating it as an intervenor in the absence of a formal order granting the United States leave to intervene.

The United States clearly had an interest in the appointment of a general receiver after the bankruptcy of the corporation in view of the decision of the Court of Claims indicating that it would order the payment of the money owed the corporation by the United States if the limited receiver were made a general receiver. The United States might then be faced with the possibility of a double payment of the money and as its experience in *U. S. v. Borcherling, supra* indicated, this dilemma was a real, and not a fanciful, one. It obviously had an interest in the subject matter as it still had title to the money in question. There was a common question of law and fact in the defense of the United States in the pending case in the Court of Claims and the Circuit Court case. See Maryland Rule 208 b 1. The Chancellor agreed with these conclusions and treated the United States as an intervenor in the case. Indeed, in the order filed March 18, 1966 the Chancellor stated that "on February 19,

574

1966 the United States of America intervened in the case." No formal order of court had, in fact, been entered on February 19, 1966. The United States, however, had fully participated in the case prior to that date, filed motions, submitted authorities and argued the various points raised. Although a formal order granting the motion of the United States to intervene *should have been entered,* we are of the opinion that no prejudice to Witbeck has been suffered by this oversight and that it would serve no useful purpose to remand the case to enter such an order which the Chancellor has already indicated had been entered. Under the circumstances of this case and in view of our opinion on the merits, the absence of the formal order is a mere technicality and we need not reverse or even remand for this reason. See Maryland Rule 873 a.

> *Order affirmed, the appellant to pay the costs.*