In the Matter of GEORGETOWN ON the DELAWARE, INC., Debtor.

Appeal of the FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, No. 72-1392.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 11, 1972.

Decided Sept. 7, 1972.

Norman R. Bradley, and Guy T. Moore, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for appellant.

Nathan Lavine, Adelman & Lavine, Philadelphia, Pa., for appellee.

Before VAN DUSEN, ALDISERT, and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question before us is whether the district court abused its discretion in ordering turnover to the reorganization trustee of a residential apartment com-plex which was the sole asset of the debtor.

The First Pennsylvania Banking and Trust Company had become the mortgagee in possession on October 28, 1971, following default by the debtor corporation in various obligations under a mortgage loan dated August 19, 1968, in the principal sum of $3,050,000.00. When the bank took possession, it claimed an indebtedness of $3,480,025.50 in principal, interest, and other charges. Foreclosure proceedings had been commenced and a sale had been scheduled for April 14, 1972. Immediately prior thereto, the debtor filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq., and was successful in obtaining an order enjoining the sale. On April 14, 1972, the trustee petitioned for an order directing the bank to relinquish possession to the trustee. Hearings were held on April 17 and 19. On May 2, 1972, the district court granted the prayer of the petition. The bank has appealed.

■■ "In a proceeding for corporate reorganization under Chapter X of the Bankruptcy Act, a mortgagee in possession of encumbered property of the debtor may be required to surrender that property to the court appointed trustee, as explicitly provided in section 257 of the Bankruptcy Act. 11 U.S.C. § 657.[1] * * * [But there are] considerations pro and con [which] shall be weighed in each case before such a turnover is ordered. . . . the cases properly suggest[ing] that a court's disposition of such a matter as this should be predicated upon a determination and weighing of potential advantage of the requested turnover in facilitating corporate reorganization on the one hand, and the likelihood of loss to the secured creditor in possession on the other. In re Third

---

1. "The trustee appointed under this chapter, upon his qualification, or if a debtor is continued in possession, the debtor, shall become vested with the rights, if any, of such prior receiver or trustee in such property and with the right to the immediate possession thereof. The trustee or debtor in possession shall also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage."

Ave. Transit C[orp.], 2d Cir. 1952, 198 F.2d 703; cf. In the Matter of O. V. Corp., 3d Cir. 1967, 378 F.2d 361; Caplan v. Anderson, 5th Cir. 1958, 256 F.2d 416. . . . A turnover of property in which the debtor had no demonstrable equity could be confiscatory. And a turnover without prospect of reorganization would be alien to the purpose of a Chapter X proceeding." In re Riker Delaware Corp., 385 F.2d 124, 125–126 (3d Cir. 1967).

■ In exercising its discretion when confronted with a turnover request, a district court "should consider . . . the probability of success of the reorganization, whether the debtor has any equity in the [premises], and the relationship of the trustees' possession . . . to the trustees' reorganization efforts." In re Flying W. Airways, Inc., 442 F.2d 320, 323 (3d Cir. 1971).

■ On review, an appellate court must decide whether, in the application of these governing principles, the district court abused its discretion in ordering the turnover of possession from the mortgagee to the trustee. This requires an examination of the operation of the enterprise before and after the mortgagee took possession, an analysis of possible reorganization plans, and a special inquiry into both the specifics of the debtor's equity and the special qualifications of the trustee.

Evidence was adduced that prior to the mortgagee's taking possession, rented units had diminished from 226 to 174, that there was general dissatisfaction with conditions in the apartments, and that the tenants had formed an association to press demands for improvements. Following possession by the mortgagee, the number of rented units had risen to 202. Testimony from the president of the tenant association disclosed they were "happier" with the bank's management of the property, and "would object to a change" preferring "that the current management continue." Another member of the association said that under bank management the morale of the tenants "is higher. There is confidence in the management and there have been specific improvements in the property."

At the time of the hearing, no specific plan of reorganization was submitted. One witness testified that although he had not personally inspected the premises he was: "interested enough to review it and ask [trustee's counsel] for time to submit a possible plan on it," and that he was "very seriously considering doing that if we can get the proper cooperation from the various creditors."

Thus, the court ordered the turnover following a hearing held only one week after the petition was filed at which the trustee suggested the prospect of a possible plan of reorganization, but disclosed no firm plan. The trustee offered no alternative plan designed to continue the improvement of the landlord-tenant relationship instituted by the bank's management after it took possession. The trustee argues that he "confidentially anticipates a successful plan in this case." Although we do not disagree with the statement of the trustee's expectations, we are not at all certain that sufficient factual data was presented to the district court supporting such a contention.

In its petition for reorganization the trustee represented that there were current assets of $61,545.00 and net fixed assets of $3,251,968.00 for a total of $3,313,513.00. It disclosed current liabilities to be $3,444,859.00; long term liabilities, $75,000; and a total stockholder deficiency of $206,346.00. The district court made no specific finding as to the presence of the debtor's equity. The memorandum of the district court suggested that the bank's indebtedness amounted to $3,350,000, although state court records placed in evidence at the hearing disclosed that the bank's debt amounted to $3,480,025.30 as of April 6, 1972. This figure was not seriously controverted.

To establish the presence of the required equity on the premises, the trustee relies on testimony that the replacement cost is $4,000,000, and that "the net appraisal amounts to $3,500,000. Thus, there is an equity for the debtor even if the bank is able to sustain its claim in the amount of $3,480,025.50." Specifically, the trustee contends that possession of a book value equity of $19,974.50 in a three and one-half million dollar stake entitles him to take possession in favor of a mortgagee in possession whose financial interest is reflected by the balance of the value.

We are not persuaded that the trustee met his burdens of demonstrating sufficient equity to justify the turnover. Moreover, as heretofore observed, the balance sheet which accompanied the debtor's petition for reorganization shows total assets of $3,313,513.00 and current and long term liabilities of $3,519,859.00. It can scarcely be said that the debtor's own figures disclosed the presence of a meaningful equity.

We now turn to the remaining factor which should have been considered by the district court—the relationship of the trustee's possession to the trustee's reorganization efforts. Implicit in this consideration is a recognition of the principle that "action depriving a mortgagee of the possession and income of property which he has obtained pursuant to his bargain before bankruptcy is . . . [a] drastic . . . expedient. . . ." In re Riker Delaware Corp., *supra,* 385 F.2d at 126. Also implicit, under the circumstances of this case, would be a finding that the trustee possesses skills, management abilities, or singular expertise to justify ousting this mortgagee who, after taking possession, had been successful in increasing the numbers of rented units and was well into the process of placating tenants' complaints which had their genesis under the debtor's possession. The district court made no finding as to the particular qualifications of the trustee for the specific responsibilities of this specialized form of management. Indeed, the court, although not making it a condition of the order ousting the bank from possession made· the suggestion that the rental agent of the *bank* be retained "as long as he keeps the occupancy rate at the highest possible level."

 We hold that the trustee failed to meet his burden of satisfying the three basic factors articulated in *Flying W. Airways* which we believe control this case. This being so, we are constrained to conclude that there· was an abuse of discretion in issuing the turnover order which deprived the mortgagee of possession.

Accordingly, the turnover order of May 2, 1972, will be vacated.