**In the Matter of EDINBORO DEVELOPMENT, INC., Debtor.**

**No. 75–92 Erie.**

United States District Court,
W. D. Pennsylvania.

Nov. 18, 1976.

Richard A. Levick, Erie, Pa., for receiver.

Warren W. Bentz, Erie, Pa., for trustee.

Eugene J. Brew, Jr., Robert B. McCullough, John R. Wingerter, Erie, Pa., for petitioners.

Thomas Beitelman, for Division of Bankruptcy, Admn. Office of U. S. Court.

Hillard Kriemer, Pittsburgh, Pa., for debtor.

Kevin R. McCarthy, Dept. of Justice, on behalf of Administrative Office of U. S. Courts, for United States.

OPINION

KNOX, District Judge.

Cleve Trust Realty Investors (herein Cleve Trust) has taken an appeal from the order of the Bankruptcy Judge in this case ordering distribution of certain amounts in an final distribution order to the Referee's Salary and Expense Fund plus $47.00 in special services charges for the said fund. Cleve Trust was the first mortgagee of the Edinboro Mall property subject of the within proceeding being a large shopping center not quite completed located near Edinboro, Erie County, Pennsylvania. It appears that this shopping center was the sole asset of the bankruptcy.

The facts are set forth at length in the memorandum of the referee in support of distribution order which allowed these monies to be paid to the Referee's Salary and Expense Fund but also denied application of counsel for petitioning creditors for compensation. These facts will not be repeated at length except as necessary to set forth the reasons for this memorandum opinion.

Briefly it may be stated that the proceeding was instituted by a creditor's petition for an involuntary bankruptcy against the debtor (hereinafter Edinboro) on March 7, 1975. Edinboro thereafter converted the proceeding to a Chapter XI Arrangement case on March 20, 1975, seeking arrangement under 11 U.S.C. § 701, et seq., being Chapter XI of the Bankruptcy Act. Prior to the filing of the creditor's petition by the creditors, Cleve Trust had commenced execution proceedings to foreclose its mortgage on the mall in the Court of Common Pleas

of Erie County, Pennsylvania. The mortgage balance was approximately $2,100,000. These foreclosure proceedings were thereupon stayed by a temporary restraining order of the bankruptcy court entered March 19, 1975 and by the automatic stay provisions of the rules.

On March 14, 1975, a receiver was appointed for Edinboro's assets and on April 7, 1975, the receiver was authorized to operate the business. The referee has found as a fact that Cleve Trust did not object to this order and in fact cooperated with the receiver in the operation of the mall. No appeal was taken by Cleve Trust from the order authorizing the receiver to operate the business. On April 23, 1975, however Cleve Trust filed a complaint to terminate the temporary restraining order and to permit plaintiff to proceed with the foreclosure action pending in the court of common pleas. Thereafter, extensive hearings were held by the bankruptcy judge on five different days, the last being August 20, 1975. It originally appeared that the mall was worth $3,000,000 and could be completed at an expense of $100,000 indicating a large equity in the debtor. Later, however, an appraisal was filed on June 14, 1975, indicating that the market value of the mall was not $3,000,000 but $1,875,000 with completion expenditures amounting to $100,000 thus indicating no equity remaining in the debtor. After further hearings, the bankruptcy judge found there was no equity and the temporary restraining order was terminated on August 25, 1975. Cleve Trust was then authorized to proceed with its foreclosure. On September 19, 1975, Edinboro was adjudicated a bankrupt in a straight bankruptcy proceeding.

Meanwhile, the receiver had conducted the business of the mall from March 14, 1975, to August 25, 1975 when the property was released for foreclosure. The final report of the trustee showed total receipts of $56,962.70 being mainly derived from the operation of the receivership. Therefore the bankruptcy court calculated the amount due the referee's salary and expense fund on the basis of these receipts. Cleve Trust

thereupon appealed pursuant to Rule 801, et seq. of the bankruptcy rules. It will be noted that appellant was required under Rule 806 to designate the contents for inclusion in the record on appeal and this was not done. The bankruptcy judge himself, however, designated the portions of the record which appear to be sufficient to determine the issues here involved and therefore we will dispose of this appeal on the merits.

■ It will also be noted that under Rule 810, it is provided "The court shall accept the referee's findings of fact unless they are clearly erroneous." We therefore accept the referee's findings as to the need for the receiver's services and management of the business in keeping the units occupied and tenants satisfied during the progress of the proceedings. The mortgagee made no objection to the receiver conducting the business, did not appeal and actually cooperated with the receiver. The referee's findings (which are supported by the evidence) as to the necessity and propriety of the services of the receiver as being indispensable to the proper administration of the proceedings and determination of the issues before the court are conclusive. The referee also points out that the mortgagee has agreed upon the compensation to be paid the receiver for his services.

It further appears that this was an asset case there being some distribution to creditors. Cleve Trust having received $37,440.00 from the receiver on account of its mortgage and it will receive the balance of the trustee's receipts after payment of administrative costs.

There is no dispute as to the calculation of the payments to be made to the referee's salary and expense fund, the only question raised being whether paying the money into this fund is an unwarranted expenditure of funds which otherwise would go to the secured creditor in this case the first mortgagee.

The referee's Salary and Expense Fund is established under 11 U.S.C. § 68 (Section 40(c) of the Bankruptcy Act and provides for payment from filing fees of $37 for each

estate and further for a schedule of fees to be charged against each estate computed "upon the net proceeds realized" and there is a further provision for charges for special services. The fund under 11 U.S.C. § 68 is established in the United States Treasury and the fees as assessed are to be covered into the Treasury and from this salaries of the referees (bankruptcy judges) and their expenses including salaries of assistants shall be paid. It is further provided that any deficiencies in the payment of salaries and expenses shall be taken out of funds in the Treasury not otherwise appropriated and provision is also made for payment of the surplus into the Treasury as miscellaneous receipts.

The United States Supreme Court has discussed the referee's salary and expense fund in connection with its decision in *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) which case held that the courts had no authority to allow the filing of a proceeding in bankruptcy without the payment of the $50 filing fee required in each case. It was held that any such relief would have to come from Congress and it was pointed out that provisions was made for payment of fees in installments in very small amounts. It was pointed out that the filing fee is disbursed as follows: $37.00 for the referee's Salary and Expense Fund, $10.00 for compensation of the trustee and $3.00 for Clerk's Services. The reason for establishing the fund was succinctly described by the court at page 447 of 409 U.S., at page 639 of 93 S.Ct. wherein it was stated:

"The rational basis for the fee requirement is readily apparent. Congressional power over bankruptcy, of course, is plenary and exclusive. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). By the 1946 Amendment, 60 Stat. 326, Congress, as has been noted, abolished the theretofore existing practices of the pauper petition and of compensating the referee from the fees he collected. It replaced that system with one for salaried referees and for fixed fees for every petition filed and a specified percentage of distributable assets. It sought to make the system self-sustaining and paid for by those who use it rather than by tax revenues drawn from the public at large."

We are thus faced in this appeal with the ever recurring problem of the extent to which the bankruptcy court in a Chapter XI proceeding can use funds for administration expenses derived from operation of or rents from the property which is the sole asset of the bankrupt and which is covered by a first mortgage or other secured liens.

■ It is elementary, of course, that a Chapter XI proceeding only applies to unsecured debts. See 11 U.S.C. § 707. It was stated by the United States Supreme Court: "[O]nly the right of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders." *Securities and Exchange Commission v. United States Realty and Improvement Company*, 310 U.S. 434 at 452, 60 S.Ct. 1044 at 1051, 84 L.Ed. 1293 (1940).

An examination of the decisions of the court of appeals for this circuit demonstrates that the answers to the question involved in this case are clearly written in their decisions. The matter was first approached in *Miners Saving Bank of Pittston v. Joyce*, 97 F.2d 973 (CCA 3d 1938) opinion by Judge Maris wherein the court in a proceeding under old Section 77(B) (now Chapter X) concluded:

"We conclude that the proceeds of the sale of the mortgaged property, as well as the net rents received therefrom after the deduction of expenses applicable thereto, should be devoted to the payment of the costs of sale, the commissions of the trustees and the referee applicable thereto, and the reasonable expenses of preserving the property, and that the balance thereof should be applied to the payment of the liens in the order of their priority, including the lien of the mortgage."

■ The court further gave recognition to the problem by recognizing that where the property is sold free of liens with the consent of the lien holders, they may be

chargeable not only with the actual cost of sale but also with expenses reasonably incurred in the preservation of the property.[1]

The Third Circuit applied the same principles to a Chapter XI proceeding *In re Pioneer Sample Book Company*, 374 F.2d 953 (1967). The court held that where there was no justification at the outset for an Arrangement proceeding under Chapter XI, where a grossly inflated value had been placed upon the assets in an attempt to "indicate a colorful case for an arrangement", in such case a secured creditor should not have to bear the expenses of such an unjustified proceeding. The court then went on to point out that the referee had found as a fact that the secured creditor posed no objection to the sale of the property and the disposition of the proceeds in bankruptcy, and it was held that referee's commissions were properly payable out of the proceeds of sale in such circumstances. It will be noted the decree of the distribution in *Pioneer Sample Book* included amounts to be paid into the referee's Salary and Expense Fund. The court held that the costs of the referee and the statutory commissions of the receiver and trustee were properly payable out of such assets. The court said in summary:

"In summary, with the fees claimed by the attorneys for the trustee and liquidating receiver disallowed, the remaining administrative costs of liquidation in bankruptcy should be charged against the distributable assets of the estate and prorated between the proceeds of liened property and free assets. The remainder of the proceeds of the liened property is distributable to Globe.

"The costs of the administration of the Chapter XI proceeding should be charged against the free assets of the estate. If any distributable sum remains, it will be available for priority wage claims. On the present record it seems clear that nothing will remain for the claims of the United States and the Commonwealth."

Again, *In re Georgetown on Delaware*, 466 F.2d 80 (3d Cir. 1972), there was a case of a mortgagee in possession when a Chapter X proceeding was filed and the mortgagee had been directed to relinquish possession to the trustee. The court stated that the bankruptcy judge had considered the probability of success and the question of whether there was any equity in the property. It will be noted that in Georgetown a secured creditor objected at once whereas in the instant case the referee has found as a fact with supporting evidence that there was no such objection and the secured creditor cooperated with the receiver.

Again, *In re Flying W. Airways Inc.*, 442 F.2d 320 (3d Cir. 1971) in a Chapter X proceeding where it appeared there was no equity in the airplanes which had been previously taken over by the secured creditor, it was held that an order requiring the assets to be turned over to the trustee under such circumstances where there was no equity could be considered confiscatory, that the bankruptcy judge should consider the probable success of the proceeding and whether there was any equity in the property.

In the instant case the record shows that from the beginning there was a very serious question as to whether there was an equity in the property. Evidence had been presented to the bankruptcy judge indicating that there might be an equity of approximately $800,000. While it eventually appeared after an independent appraisal

---

1. "While there is no authority for the proposition that one who has a lien on the property of a bankrupt is entitled to be paid in full out of the proceeds of the liened property subject only to prior liens and a contribution to the expense of administering the bankrupt estate not in excess of what it would have cost to foreclose the lien, *Odendahl v. Pokorny Realty Co.*, 5 Cir., 76 F.2d 271, we think the true rule to be that, where a trustee sells a bankrupt's property free of liens, with the consent of the lien-holders, the latter are chargeable not only with the actual costs of sale but also with expenses reasonably incurred in the preservation of the property, *Virginia Securities Corporation v. Patrick Orchards*, 4 Cir., 20 F.2d 78 and with the trustee's and referee's commissions payable with respect to the proceeds of the sale, *Tawney v. Clemson*, 4 Cir., 81 F.2d 300, but with no other expenses of administration, except with their consent, express or implied, *In re Torchia*, 3 Cir., 188 F. 207."

was secured that the value of the property was slightly below that of the encumbrance, nevertheless a determination of this matter took many hearings and a considerable amount of time before an intelligent decision could be made by the bankruptcy judge. As soon as it was determined there was no equity, the bankruptcy judge promptly terminated the receivership and allowed the secured creditor to proceed with a foreclosure. Meanwhile, it was necessary that the property be operated by the receiver, that rents be collected and the tenants be kept satisfied. Otherwise, the secured creditor would have had the value of his security seriously impaired.

It is this acquiescence of the secured creditor in operation by the receiver which distinguishes this case from the *Matter of Presidential Homes, Inc.,* 1 Bkcy. Ct. Decisions 983 (D.N.J.1975) See also *In re Penn Central Transportation Company,* 494 F.2d 270 (3d Cir. 1974).

In the light of the foregoing, the bankruptcy judge's findings being supported by substantial evidence, it is apparent that the referee's Salary and Expense Fund should receive a contribution in this case from the secured creditor who has used the services of the bankruptcy court, as laid down in *United States v. Kras,* supra.

The order of the bankruptcy judge will be affirmed.