## In re JACK STOLKIN, Inc.

### PENDER v. CLARK et al.

### No. 215.

Circuit Court of Appeals, Second Circuit.

July 7, 1930.

On May 24, 1928, there was a meeting of the creditors of Jack Stolkin, Inc., at the New York Credit Men's Adjustment Bureau, and at the request of the meeting Jack Stolkin executed a deed transferring its property to Marvin W. Clark and William Walker Orr as assignees for the benefit of creditors. Both of the assignees were employees of the Credit Men's Adjustment Bureau. Jack Stolkin, Inc., was a corporation engaged in manufacturing textiles. The creditors' committee desired the business continued for the purpose of completing unfinished goods. The assignees put a manager as well as a custodian, who were employees of the Credit Men's Adjustment Bureau, in charge of the factory, and through them as representatives took an inventory and conducted the business. As irregularities were suspected by the creditors, they also employed an accountant at $250 to go over the books and make a report, and employed the collection department of the Credit Men's Adjustment Bureau to collect the claims of the insolvent at a charge of 5 per cent. All this was apparently done with the approval of the creditors' committee.

After an examination by the accountant, a situation was disclosed which the creditors' committee thought made the processes of bankruptcy, such as examinations under section 21a, Bankruptcy Act (11 USCA § 44(a), desirable. Accordingly on June 7, 1928, a petition in bankruptcy was filed by three creditors and a receiver was appointed to whom the assignees at once turned over the physical assets of Jack Stolkin, Inc.

The assignees, through the Credit Men's Adjustment Bureau, collected about $7,000 of the claims, but all except about $2,700 of this amount was collected before the receiver was appointed. The receiver was apparently acquiescent in the collections made by the bureau after his appointment. On September 13, 1928, the assignees turned over to the receiver a cash balance of $6,319.02. They had paid out from moneys collected the following sums: Wages of workmen of Jack Stolkin hired by the assignees to complete goods in process of manufacture, $1,163.13; wages of custodian and manager from New York Credit Men's Adjustment Bureau, $263.50; collection fees of New York Credit Men's Adjustment Bureau, $375.45; accountant, $250; assignees' fees, $332.58.

The check which the assignees drew for their own fees with the authorization of the creditors' committee they indorsed over to New York Credit Men's Adjustment Bureau.

Each assignee testified that the business was managed and the claims were collected through the Credit Men's Adjustment Bureau. This entire method of administration appears to have been approved by the creditors' committee. Neither assignee attended

at the factory but the Credit Men's Adjustment Bureau in such cases acted under their general supervision.

On April 27, 1929, the assignees filed their report on the direction of the referee in bankruptcy praying "for an order approving and settling their account" and on its face "expressly reserving their rights as adverse claimants to all moneys expended by them as such assignees."

The referee made no criticism of the good faith of the assignees, nor has any one; but he regarded the payments aggregating $263.-50, for the manager and custodian, as excessive to the extent of $41.50, and the sum of $332.58 taken by the assignees for their own compensation as an item which he should not allow for the reason that "they rendered no services other than services incidental to their employment as employees of the New York Credit Men's Adjustment Bureau," and because they in fact received no fee seeing that they turned the $332.58 over to the bureau. The referee accordingly surcharged the account of the assignees to the extent of $41.50 and $332.58 and reported that they and the Credit Men's Adjustment Bureau should pay over $374.08, or the aggregate thereof, to the trustee in bankruptcy. He also directed notice of application for any order upon his report to be given to Credit Men's Adjustment Bureau, Inc. Upon review of the referee, the District Court confirmed the report and directed the assignees and the Credit Men's Adjustment Bureau, Inc., to pay over $374.-08 to the trustee. From the portion of the order directing this payment, the assignees and the Credit Men's Adjustment Bureau, Inc., appeal.

Gregory, Stewart & Montgomery, of New York City (W. Randolph Montgomery and Harold Remington, both of New York City, of counsel), for appellants.

Benjamin Siegel, of New York City, for trustee-appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The item of $41.50 was a part of the payment for services performed by the employees of the Credit Men's Adjustment Bureau before the filing of the petition in bankruptcy, and the $332.58 was a payment for compensation of the assignees. Both payments were made by the assignees after the filing of the petition for services rendered before.

This appeal relates only to the foregoing two items, and the question before us is whether the District Court had the right to pass upon the validity of these payments in a summary proceeding. The assignees and the Credit Men's Adjustment Bureau, Inc., insist that they are in the position of adverse claimants in respect to these items and that they may require the trustee in bankruptcy to establish any claim which he has against them in a plenary action.

A summary remedy may be had to recover property belonging to the estate which is actually or constructively in the possession of the bankrupt. Inasmuch as an assignment for the benefit of creditors is of itself an act of bankruptcy which, if made within four months of the filing of the petition, is avoided by an adjudication in bankruptcy, it might have been held as an original proposition that everything connected with the administration by the assignees which had not been adjudicated by the state court before the filing of the petition was open to examination and revision by the bankruptcy court. Indeed the Supreme Court said in Bryan v. Bernheimer, 181 U. S. at page 192, 21 S. Ct. 557, 559, 45 L. Ed. 814:

"The general assignment made by Abraham to Davidson did not constitute Davidson an assignee for value, but simply made him an agent of Abraham for the distribution of the proceeds of the property among Abraham's creditors."

But the Supreme Court, while adhering to the rule that the bankruptcy court may summarily order the assignee to turn over property in his hands or under his control which formerly belonged to the bankrupt in so far as it is not fairly required to pay obligations which he incurred before the petition was filed, or to compensate him for his services, has treated him as an adverse claimant in respect to such items.

In Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413, an assignee had paid his counsel and himself after the filing of a petition in bankruptcy such sums "as would have been due him under the established practice of the State Court." In re Reiswig (D. C.) 253 F. 390, at page 396. The Supreme Court held that, as to these sums, the assignee asserted adverse claims existing at the time the petition was filed, and that the trustee in bankruptcy must proceed against him by plenary action.

In Galbraith v. Vallely, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823, a situation arose

almost precisely like the present. Judge Amidon had attempted in a very able opinion (sub nomine In re Reiswig [D. C.] 253 F. 390) to distinguish Louisville Trust Co. v. Comingor, supra, and had sustained the power of the bankruptcy court to pass upon the claims of the assignee for his own compensation and certain disbursements in a summary proceeding. His decision was affirmed by the Court of Appeals of the Eighth Circuit (261 F. 670); but in a unanimous opinion the Supreme Court said (256 U. S. at page 50, 41 S. Ct. 415, 416, 65 L. Ed. 823):

"The principle of the Comingor Case has never been departed from in this court. It establishes the right of an assignee for the benefit of creditors, to the extent that he asserts rights to expenses incurred and compensation earned under an assignment in good faith before the bankruptcy proceedings, to have the merits of his claim determined in a judicial proceeding suitable to that purpose, and not by summary proceedings where punishment for contempt is the means of enforcing the order. We see no occasion to depart from this practice."

Thus it seems to have been steadily held that the claims of an assignee for compensation or indemnity for expenses in matters antedating the filing of a petition in bankruptcy so far as they are not colorable cannot be disposed of in a summary proceeding. The amount which may be allowed depends upon the benefit which has been afforded to the bankruptcy estate (Randolph v. Scruggs, 190 U. S. at page 538, 23 S. Ct. 710, 47 L. Ed. 1165), but it must be determined in a plenary action if the assignee stands on his rights in this respect.

It may be argued that the assignees here administered the estate through the New York Credit Men's Adjustment Bureau, Inc., and therefore had no substantial claim to compensation. Whatever may be thought of a practice whereby an assignee engages his own corporate employer to perform the active duties of his trust and then turns over his commissions to that employer, we cannot say that the assignees here, who were in a position of control over the administrative activities of subordinate employees of the Bureau, performed no useful functions. Mr. Orr, when examined, said: "We consulted with them on many questions that came up." While both he and Clark were unable to remember much about the Stolkin estate after a considerable lapse of time and in view of the great amount of similar business they were attending to, it seems evident that they

were not only responsible for the disposition of assets of considerable value, but were in fact as well as in law the directing heads of the liquidation and supervised it to the satisfaction of an active and vigilant creditors' committee.

In May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870, the Supreme Court held that assignees were properly directed to turn over assets of a bankrupt estate to the trustee in a summary proceeding. But Justice Stone, who wrote the opinion, at page 119 of 268 U. S., 45 S. Ct. 456, 460, distinctly recognized Louisville Trust Co. v. Comingor and Galbraith v. Vallely as binding authorities and only rejected the assignee's contention that he was an adverse claimant because the claim there was "merely colorable and on its face made in bad faith and without any legal justification."

In re Neuburger (D. C.) 233 F. 701; Id. (C. C. A.) 240 F. 947, and In re Diamond's Estate (C. C. A.) 259 F. 70, were decided before Galbraith v. Vallely, supra, and, like In re Reiswig, supra, sought to distinguish Louisville Trust Co. v. Comingor. The recent unreported decision of Gamble v. Daniel, Receiver, 39 F.(2d) 447, by the Circuit Court of Appeals of the Eighth Circuit, affirmed a summary order, because the claimant set up only a colorable claim. In re Freeman, 35 F.(2d) 952, was a case like the present, and the Court of Appeals of the Fifth Circuit held that a summary proceeding would not lie.

From the point of view of efficient administration, it seems unfortunate that a partial administration of an estate by an assignee followed by the filing of a petition in bankruptcy should not only subject the estate to the expense of an assignee, receiver, and a trustee in bankruptcy, but should require the compensation and expenses of the assignee to be fixed by a court which cannot from the nature of things have the advantage of viewing the administration as a whole. If the bankruptcy court had been empowered to deal with the entire matter, it would have had this advantage, but, under the rule laid down in Galbraith v. Vallely, supra, we think that it was precluded from adjudicating upon the items in question.

The practice of arranging for a general assignment to be followed by a bankruptcy proceeding has been frequent in many parts of the country. In re Reiswig (D. C.) 253 F. at pages 392, 393. In the present case there was apparent reason for it, but the practice abounds in possibilities of abuse and

always involves added expense. Control of the settlement of the accounts of assignee, receiver, and trustee by a single court would facilitate prompt administration and avoid some of the difficulties; but, if such a remedy may be had, it can only be by securing from the Supreme Court a modification or interpretation of the doctrine laid down in Galbraith v. Vallely, supra.

The order to the extent appealed from is reversed.