## EMIL, TRUSTEE IN BANKRUPTCY, *v.* HANLEY, RECEIVER.

No. 551. Argued February 12, 1943.—Decided March 15, 1943.

*Mr. David Haar* for petitioner.

*Mr. John P. McGrath* for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

John M. Russell, Inc., was the owner of an apartment house in New York. On August 13, 1940, a foreclosure suit by a third mortgagee was filed. On August 17, 1940, the state court appointed respondent receiver of the rents and profits of the apartment house. On August 31, 1940, an involuntary petition in bankruptcy was filed against John M. Russell, Inc., of which petitioner was subsequently appointed as trustee. Respondent collected the rents from the premises from the time of his appointment in August, 1940 to and including August, 1941. While that foreclosure suit was pending, mechanics liens, subordinate to the third mortgage, were foreclosed, a sale was had, and the property purchased by Apartment Investing Corporation. That was in February, 1941. Judgment in the mortgage foreclosure suit was entered in June, 1941, and on August 13, 1941, before the sale was held, the judgment was paid and satisfied by Apartment

Investing Corporation. Thereafter, respondent presented his accounts to the state court for settlement. Petitioner applied to the bankruptcy court for an order directing respondent to file his account in that court. While that motion was pending, the motion in the state court came on for a hearing. Petitioner appeared and filed his objections to respondent's accounts. His objections were overruled,[1] the accounts approved, and respondent discharged by the state court. Thereafter the bankruptcy court denied petitioner's motion. 43 F. Supp. 128. The Circuit Court of Appeals affirmed by a divided vote. 130 F. 2d 369. We granted the petition for a writ of certiorari because of the importance of the problem in the administration of the Bankruptcy Act.

Petitioner contends that § 2 (a) (21) and § 69d make it obligatory on the respondent as a non-bankruptcy receiver to account to the bankruptcy court. These provisions of the Bankruptcy Act are new. They were added in 1938 by the Chandler Act. 52 Stat. 840, 11 U. S. C. § 11 (a) (21), § 109d. Sec. 2 (a) (21) gives to the bankruptcy court the power in straight bankruptcy proceedings to require "receivers or trustees appointed in proceedings not under this Act" within four months of bankruptcy (1) "to deliver the property in their possession or under their control to the receiver or trustee appointed under this Act," and (2) "to account to the court for the disposition by them of the property" of the bankrupt.[2] Sec. 69d makes a "receiver or trustee, not ap-

---

[1] The court holding that all rights of the bankrupt in the real property were cut off February 24, 1941; that on that day there was a deficit in the receiver's account; and that the balance of rents had accrued subsequent to February 24, 1941.

[2] Sec. 2 (a) (21) sets forth as one of the enumerated powers of courts of bankruptcy, the power to: "Require receivers or trustees appointed in proceedings not under this Act, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate

pointed under this Act, of any of the property" of the bankrupt "accountable" to the bankruptcy court for "any action taken by him subsequent to the filing of such bankruptcy petition."[3] These sections are in part declaratory of the law as it existed prior to the Chandler Act. Thus, § 2 (a) (21) plainly includes the case where a lien against

a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this Act or, where an arrangement or a plan under this Act has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this Act, to deliver such property to the debtor or other person entitled to such property according to the provisions of the arrangement or plan, and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: *Provided, however,* That such delivery and accounting shall not be required, except in proceedings under chapters X and XII of this Act, if the receiver or trustee was appointed, the assignment was made, or the agent was authorized more than four months prior to the date of bankruptcy. Upon such accounting, the court shall reexamine and determine the propriety and reasonableness of all disbursements made out of such property by such receiver, trustee, assignee, or agent, either to himself or to others, for services and expenses under such receivership, trusteeship, assignment, or agency, and shall, unless such disbursements have been approved, upon notice to creditors and other parties in interest, by a court of competent jurisdiction prior to the proceeding under this Act, surcharge such receiver, trustee, assignee, or agent the amount of any disbursement determined by the court to have been improper or excessive."

[3] Sec. 69d provides: "Upon the filing of a petition under this Act, a receiver or trustee, not appointed under this Act, of any of the property of a bankrupt shall be accountable to the bankruptcy court, in which the proceeding under this Act is pending, for any action taken by him subsequent to the filing of such bankruptcy petition, and shall file in such bankruptcy court a sworn schedule setting forth a summary of the property in his charge and of the liabilities of the estate, both as of the time of and since his appointment, and a sworn statement of his administration of the estate. Such receiver or trustee, with knowledge of the filing of such bankruptcy proceeding, shall not make any disbursements or take any action in the administration of such property without first obtaining authorization therefor from the bankruptcy court."

the debtor's property was acquired by some legal or equitable proceeding within four months of bankruptcy. Prior to 1938 such liens did not survive bankruptcy (*Straton* v. *New*, 283 U. S. 318, 322) ; and bankruptcy superseded the proceedings out of which they arose. Remington, Bankruptcy (4th ed.) § 2067–§ 2071. But the accountability of the non-bankruptcy receiver or trustee presented some difficulties prior to the Chandler Act. When bankruptcy superseded the prior proceedings, all disbursements subsequent thereto were, of course, subject to the exclusive control of the bankruptcy court. *In re Diamond's Estate*, 259 F. 70; *Moore* v. *Scott*, 55 F. 2d 863; *Lion Bonding & Surety Co.* v. *Karatz*, 262 U. S. 640, 642; *Gross* v. *Irving Trust Co.*, 289 U. S. 342. While such disbursements were generally subject to the summary power of the bankruptcy court (*Taylor* v. *Sternberg*, 293 U. S. 470), an accounting for disbursements made prior to bankruptcy required a plenary suit. *Loveless* v. *Southern Grocer Co.*, 159 F. 415; 1 Collier, Bankruptcy (14th ed.) pp. 320–321. And see *Galbraith* v. *Vallely*, 256 U. S. 46; *In re Jack Stolkin, Inc.*, 42 F. 2d 829. Sec. 2 (a) (21) by substituting a summary proceeding was designed to eliminate the delay and cost of a plenary suit and to provide a more effective control over prior disbursements. See H. Rep. No. 1409, 75th Cong., 1st Sess., p. 20; Weinstein, The Bankruptcy Law of 1938, pp. 16–17.

Does § 2 (a) (21) go further and apply to a case where a receiver is appointed within four months of bankruptcy as an incident to enforcement of a mortgage lien whose validity is not challenged? Prior to the Chandler Act such proceedings were not superseded by bankruptcy. They survived bankruptcy, the interest of the estate in them being protected by the intervention of the bankruptcy trustee. *Straton* v. *New, supra,* pp. 326–327, and cases cited. Under the earlier Act it made no difference whether such a proceeding was instituted prior to or within the

four months period. Where the lien survived bankruptcy, prior proceedings to enforce it would not be enjoined by the bankruptcy court. 1 Collier, *op. cit.*, pp. 306–309; *Straton* v. *New, supra,* p. 326, n. 6. Sec. 2 (a) (21) read literally would call for a different result, in that foreclosure receivers would have to turn over to the bankruptcy court all the property in their possession or under their control, and account to it. In this case, since the receiver was only a receiver for rents and profits, it would mean that the foreclosure would go on apace in the state court while the funds collected by the receiver would be turned over to the bankruptcy court for administration. The argument advanced in support of that view is that with such power the bankruptcy court could better protect the interests of the estate in the foreclosure proceeding.

But we do not think that that was part of the purpose of § 2 (a) (21). As we have stated, the main purpose of § 2 (a) (21) was to give the bankruptcy court control over disbursements made in non-bankruptcy proceedings prior to the filing of the petition. The House Judiciary Committee in its report stated: "There is no logical reason why the bankruptcy court could not supervise these expenditures, since all of the previous proceedings are nullified by the petition in bankruptcy followed by an adjudication. The principle is the same as that involved in section 60d of the act where it is provided that fees paid to the attorney for the debtor prior to bankruptcy and in contemplation thereof are subject to review by the bankruptcy court." H. Rep. No. 1409, *supra,* p. 20. That is as plain an indication as could be made that § 2 (a) (21) was designed to define the powers of the bankruptcy court only where bankruptcy superseded the prior proceedings.[4] The language of § 2 (a) (21) squares with that express

---

[4] We do not, of course, include that supersession which flows from the fact that state insolvency laws are involved which are "tantamount to bankruptcy." *Straton* v. *New, supra,* p. 327.

declaration. When Congress wrote the four months proviso into § 2 (a) (21) it was not writing on a clean slate. The presence of that proviso suggests the type of problem with which Congress was dealing. *Straton* v. *New, supra,* indicates the importance of that period in a determination of what liens did not survive bankruptcy and when bankruptcy proceedings superseded prior proceedings. The 1938 Act, like its predecessor, makes the four months period part of the critical test for determining what liens do not survive bankruptcy. One example is to be found in § 67a (1) which provides that liens "obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months" of bankruptcy are null and void on certain conditions. That section illustrates the relevancy of the four months period to this type of problem. If § 2 (a)(21) is read to extend the power of the bankruptcy court to the present situation,[5] the four months period will have acquired a new significance in bankruptcy law. We cannot help but think that if Congress had set out to make such a major change, some clear and unambiguous indication of that purpose would appear. But we can find none. Moreover, such an interpretation would lead in many cases to a division of authority between state and federal courts. Thus in this case the state court would remain in charge of the foreclosure; the bankruptcy court would have exclusive control over the receiver's receipts. An interpretation which leads to a division of authority so fraught with conflict will not be readily implied.

---

[5] We do not reach the question, reserved in *Duparquet Huot & Moneuse Co.* v. *Evans,* 297 U. S. 216, 224, whether the appointment of a foreclosure receiver might be an act of bankruptcy under § 3 (a) (5). See *In re 211 East Delaware Place Bldg. Corp.,* 14 F. Supp. 96. It was suggested in *Randolph* v. *Scruggs,* 190 U. S. 533, 536, that bankruptcy superseded a general assignment for the benefit of creditors made within the four months period since the making of the assignment was an act of bankruptcy. And see *Remington, op. cit,* § 2071.

It is argued, however, that the provision in § 2 (a) (21) concerning proceedings under chapters X and XII indicates a purpose to include the type of receiver we have here. It seems clear that such a foreclosure receiver is included within § 2 (a) (21) where proceedings under Ch. X have supervened. But the fact that a foreclosure receiver is included for one purpose does not necessarily mean that he is included for another. Plans of reorganization under Ch. X may (§ 216) and commonly do affect the rights of mortgagees. Hence § 148 provides that an order approving a petition under Ch. X operates to stay a pending mortgage foreclosure or other proceeding to enforce a lien against the debtor's property.[6] And § 256 and § 257 provide that the trustee (or debtor) acquires all rights in, and the right to immediate possession of, the property of the debtor under the control of a receiver or trustee appointed in a prior proceeding in any federal or state court. That is to say, a Ch. X proceeding supersedes a pending mortgage foreclosure. We thus find § 2 (a) (21) performing the same function when applied to Ch. X proceedings [7] as it does when applied to ordinary bankruptcy. We conclude that the Circuit Court of Appeals was correct in reading the word "receivers" distributively. Such a construction fits the statutory scheme as a whole. The other interpretation results in a distortion which the language of § 2 (a) (21) makes unnecessary and which its history does not warrant.

Little need be said about § 69d. It must be read in connection with § 2 (a) (21). The legislative history suggests that it, too, was designed to apply only where bankruptcy superseded the prior proceedings. H. Rep. No. 1409, *supra*, p. 12. As stated by the draftsman, "It makes

---

[6] And unlike proceedings under § 77B (*Duparquet Huot & Moneuse Co.* v. *Evans*, 297 U. S. 216), a mortgage foreclosure is adequate under certain conditions for a creditor's petition under Ch. X. § 131 (4).

[7] Similar considerations are applicable to real property arrangements under Ch. XII. §§ 406 (1), 411, 416, 428.

clear and certain the exclusive and paramount jurisdiction of the bankruptcy court over property dealt with in a prior equity receivership or like proceeding which is superseded by a bankruptcy proceeding." Weinstein, *op. cit.*, p. 154. And see 4 Collier, *op. cit.*, pp. 879–882.

*Affirmed.*

Mr. Justice Rutledge did not participate in the consideration or decision of this case.