**In re 221A HOLDING CORPORATION, Debtor.**

**Bankruptcy No. 79–312.**

United States District Court, E. D. Pennsylvania.

Oct. 17, 1979.

Jack B. Justice, Drinker, Biddle & Reath, Philadelphia, Pa., for debtor.

Pace Reich, Philadelphia, Pa., for receiver, appellant.

Don F. Marshall, Newton, Pa., for Trevose Federal S/L., appellant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is an appeal from an order of the bankruptcy court requiring a non-bankruptcy receiver to turn over property to the debtor in possession in an arrangement proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–99 (1976).[1] The receiver was appointed by the United States District Court for the District of the Virgin Islands on January 25, 1979 in aid of a mortgage foreclosure action by Trevose Federal Savings and Loan Association (Trevose) against the debtor, 221A Holding Corporation. By the terms of his appointment the receiver was directed to take immediate possession of the mortgaged property, to manage the property, to collect rents and profits and to pay at 90-day intervals all accumulated receipts in excess of $25,000 to Trevose "for application on the mortgaged indebtedness." The mortgaged property, known as "Barrier Reefe", is a resort hotel and condominium located in St. Croix, Virgin Islands and is the sole asset of the debtor.

On March 2, 1979, 221A filed a petition for arrangement under Chapter XI in the bankruptcy court for this District. On the same day the bankruptcy Judge issued, *ex parte*, an "Order Authorizing Operation of Business" which ordered the receiver to surrender possession of Barrier Reefe to 221A

as "debtor in possession". On March 7, after Trevose and the receiver had objected informally to the court's jurisdiction, the bankruptcy Judge amended his order to permit the receiver to continue operating Barrier Reefe. Two days later the debtor applied to vacate the amended order and thereby restore the turnover order. After receiving briefs and hearing oral argument, but without conducting an evidentiary hearing, the bankruptcy Judge issued an opinion sustaining his jurisdiction. He ordered the receiver to relinquish possession to the debtor. From this order Trevose and the receiver appeal.[2]

Appellants raise several objections to the turnover order. First, they partially renew their attack on the bankruptcy court's jurisdiction to order turnover from the non-bankruptcy receiver. Second, assuming the court's power, appellants claim that it was an abuse of discretion for the court to order turnover without holding an evidentiary hearing to determine "the equities" as between the debtor and Trevose as mortgagee. Finally, appellants claim that the bankruptcy court erred in granting relief based on an "application" because a turnover action is an adversary proceeding which must be commenced by complaint under Part VII of the Bankruptcy Rules.

For substantially those reasons set forth in Judge Goldhaber's opinion, I agree that the bankruptcy court had authority to enter a turnover order. Appellants took the position in the bankruptcy court that the jurisdiction of a Chapter XI court extends only to property in the possession of the debtor at the time of filing. The bankruptcy Judge disagreed, holding that ownership without possession is sufficient to support the jurisdiction of a Chapter XI court. After preserving this issue for appeal, *see* Bankruptcy Rule 806, appellants apparently have reconsidered their position and now urge different "jurisdictional" defects.

1. The Bankruptcy Act was repealed, effective October 1, 1979, by the 1978 Bankruptcy Reform Act, Pub.L. 95–598 § 401(a). However, because this case was commenced under the old Act, that law governs. *Id.* § 403(a).

2. The bankruptcy court stayed its turnover order pending determination of this appeal. Thus, save for a single five day period, the receiver has been in continuous possession of the property since his appointment.

■ Judge Goldhaber was correct in his ruling. Although the question is formally open in this circuit, *In re Pittsburgh Penguins Partners*, 598 F.2d 1299, 1302 (3d Cir. 1979), the "possession" versus "ownership" debate has occupied courts and commentators for some time. *See, e. g., .In re Stockman Development Co.,* 447 F.2d 387 (9th Cir. 1971), *cert. denied,* 405 U.S. 923, 92 S.Ct. 962, 30 L.Ed.2d 794 (1972); *Summary Jurisdiction Under Chapter XI of the Bankruptcy Act: Collier v. Remington,* 59 Geo. L.J. 1395 (1971). In liquidation or "straight" bankruptcy proceedings under Chapters I–VII of the Act, 11 U.S.C. §§ 1–112 (1976), the traditional view is that possession by the bankrupt is necessary for the property to pass into the custody of the bankruptcy court. *See Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876 (1940). An enlarged jurisdiction is necessary, however, to carry out the continuation and rehabilitation of a debtor contemplated by an arrangement under Chapter XI. The statutory basis for this expanded jurisdiction is § 311, 11 U.S.C. § 711 (1976), which provides a Chapter XI court with "exclusive jurisdiction of the debtor and his property, wherever located." Significantly, Chapters I–VII contain no comparable provision, 8 Collier on Bankruptcy, ¶ 3.02, at 157–58 (1976), although similar jurisdictional language appears in each of the rehabilitative chapters. *See* 11 U.S.C. § 511 (Chapter X), § 811 (Chapter XII), § 1011 (Chapter XIII) (1976).[3] In light of the long-standing rule of construction that Congress likely intended to tailor the jurisdiction of the bankruptcy courts to their function, *Ex parte Christy,* 44 U.S. (3 How.) 292, 312–13, 11 L.Ed. 603 (1845), the bankruptcy Judge properly read "property"

to include legal title without possession. *Accord, In re Copeland,* 391 F.Supp. 134, 140 (D.Del.1975), *aff'd in part and vacated in part on other grounds,* 531 F.2d 1195 (3d Cir. 1976); *Roebling Steel & Wire Corporation,* 1 B.C.D. 944, 945–46 (D.N.J.1975). *See In re Co-Build Companies, Inc.,* 408 F.Supp. 717, 720 n.2 (E.D.Pa.1976); *Rec-Wil, Inc. v. First Pennsylvania Banking & Trust Company,* 352 F.Supp. 782, 786 (E.D.Pa.1973).

■ Appellants cite *Emil v. Hanley,* 318 U.S. 515, 63 S.Ct. 687, 87 L.Ed. 954 (1943) for the proposition that the bankruptcy court lacked "jurisdiction" to order a turnover under § 2(a)(21) of the Bankruptcy Act even though that section appears on its face to authorize the type of relief granted in this case.[4] Judge Goldhaber quite properly distinguished *Emil,* pointing out that the case involved a straight bankruptcy where the bankruptcy court has no power to enjoin a state foreclosure action. *Emil* simply avoided the anomaly that "the foreclosure would go on apace in the state court while the funds collected by the state receiver would be turned over to the bankruptcy court for administration." *Id.* at 520, 63 S.Ct. at 690. That rationale, however, does not apply under Chapters X and XII where the bankruptcy court has the authority to enjoin a pending foreclosure proceeding. *Id.* at 522 & n.6, 63 S.Ct. at n.6. No different rule should apply under Chapter XI which contains not only discretionary injunctive authority under § 314, 11 U.S.C. § 714 (1976), but an automatic stay of any proceeding against the debtor under Chapter XI Rule 11–44 as well.

■ Granting the jurisdiction and authority of the court, the question of the propriety of its order remains. Appellants

---

**3.** Similar language is carried forward by § 241(a) of the 1978 Bankruptcy Reform Act, Pub.L. 95–598, *codified at* 28 U.S.C.A. § 1471(e) (1979).

**4.** Section 2(a)(21) provides, in pertinent part, that a bankruptcy court may:

> Require receivers or trustees appointed in proceedings not under this title, . . . to deliver the property in their possession or under their control to the receiver or trustee appointed under this title . . .: *Provid-*

> *ed, however,* That such delivery and accounting shall not be required, except in proceedings under section 205 and chapters 10 and 12 of this title, if the receiver or trustee was appointed, . . . more than four months prior to the date of bankruptcy.

11 U.S.C. § 11(a)(21) (1976). This section applies in Chapter XI proceedings. *Id.* § 702; *see In re Pine Tree Feed Co.,* 112 F.Supp. 124, 125 (D.Me.1953).

claim that the court's failure to hold an evidentiary hearing and explain its reasons for ordering turnover amounts to an abuse of discretion. I agree that there is no basis on the present record to support the bankruptcy court's turnover order and will remand for a hearing as described below.

In a series of cases decided under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501–676 (1976), the Third Circuit has taken a restrictive view of the discretion of a bankruptcy court to order turnover from a mortgagee in possession. *In re Georgetown on the Delaware, Inc.,* 466 F.2d 80 (3d Cir. 1972); *In re Flying W. Airways, Inc.,* 442 F.2d 320 (3d Cir. 1971); *In re Riker Delaware Corp.,* 385 F.2d 124 (3d Cir. 1967). *See In re O. V. Corp.,* 378 F.2d 361, *later appeal,* 386 F.2d 833 (3d Cir. 1967). Although § 257, the statutory provision construed in these cases, like § 2(a)(21), does not set out any conditions for granting turnover relief, the Third Circuit has consistently held that such relief "should be predicated upon a determination and weighing of potential advantage of the requested turnover in facilitating corporate reorganization on the one hand, and the likelihood of loss to the secured creditor in possession on the other." *In re Riker Delaware Corp.,* 385 F.2d at 125. The rationale for this requirement is the perceived drastic nature of turnover relief:

> An ex parte, unconsidered or routinely entered turnover order would disregard the harsh character of the imposition upon the secured creditor in possession and the danger that he be subjected to serious impairment of his security without real prospect of compensating advantage to all concerned through a successful reorganization of the financially embarrassed debtor. A turnover of property in which the debtor had no demonstrable equity could be confiscatory. And a turnover without prospect of reorganization would be alien to the purpose of a Chapter X proceeding.

*Id.* at 126.

■■ Counsel have cited and I have found no authority applying or refusing to apply these Chapter X cases to a turnover order issued under Chapter XI. Nevertheless, a comparison of the two statutes suggests that the Chapter X rule should apply with at least equal force in a Chapter XI proceeding. Arrangement and reorganization share similar goals, and although the two chapters differ in important respects, *see generally Securities & Exchange Commission v. United States Realty & Improvement Co.,* 310 U.S. 434, 446–61, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), those very differences buttress the conclusion that the Chapter X rule should be equally applicable to Chapter XI proceedings. Most significantly for present purposes, a Chapter X proceeding may affect the substantive rights of secured creditors; a Chapter XI proceeding may not. *See* 11 U.S.C. § 707. Consistent with this scheme, Chapter X proceedings are exempted from the four month proviso in § 2(a)(21), *see* note 3 *supra,* and secured interests are thereby afforded correspondingly less protection under Chapter X than under Chapter XI. Thus, in this case if the non-bankruptcy receiver representing the mortgagee (a secured creditor) were appointed more than four months before the bankruptcy filing, the Chapter XI court could not deprive the mortgagee of the asset held by the receiver. Under Chapter X the security may be recovered no matter when the non-bankruptcy receiver was appointed. Given this statutory framework, it would be anomalous not to apply the rule of *Riker Delaware Corp., supra,* a Chapter X case, to a Chapter XI turnover order.

It may be argued that the applicability of Chapter X precedents in the present case is undercut by the general rule that Chapter X is designed for corporations with complicated financial structures and many stockholders and creditors, thus infusing reorganization proceedings with a degree of public interest. *See Securities & Exchange Commission v. United States Realty & Improvement Co.,* 310 U.S. 434, 447, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). Nevertheless, I am not persuaded that size or complexity alone suffices to distinguish Chapter XI proceedings. Nor does the reference in § 257 to

"mortgagees" rather than receivers in possession alter my conclusion. Considerations of comity, if nothing else, argue that a court-appointed receiver should be accorded similar treatment to a mortgagee. Moreover, if the debtor's right to "immediate" possession under § 257 is indeed conditional, the less explicit language of § 2(a)(21) surely cannot permit the bankruptcy court greater discretion.

On remand the bankruptcy court should conduct a hearing to determine whether the probable benefit to the debtor from the turnover order will outweigh the probable detriment to the secured creditor. Among the factors to be considered are the probability of success of the arrangement, whether the debtor has any equity in the property, the relationship of the debtor's possession of the property to the arrangement effort and the probability of loss to the secured creditor. *See In re Flying W. Airways, Inc.,* 442 F.2d 320, 323 (3d Cir. 1971). Since it appears that a turnover proceeding under § 2(a)(21) is an action to recover property within the meaning of Chapter XI Rule 11–61(a), any further proceedings regarding turnover are governed by part VII of the Bankruptcy Rules. *See* 2 Collier on Bankruptcy, ¶ 23.10[3] (1976). I emphasize, however, that the necessary findings are of a preliminary nature and need not require a burdensome full-blown adjudication of the issues.

In the interest of economy, the bankruptcy court may either consolidate this matter with the pending action for relief from the Rule 11–14 stay or adopt findings made in that action as it sees fit.