MERCHANTS GRAIN, INC., By and Through Receiver, Edmund M. MAHERN, Appellant,

v.

Mark ADKINS, et al., Appellees.

In re MERCHANTS GRAIN, INC., By and Through Receiver, Edmund M. MAHERN.

MERCHANTS GRAIN, INC., By and Through Receiver, Edmund M. MAHERN, Plaintiff,

v.

Mark ADKINS, et al., Defendants.

Cause No. IP 95–0030–C–M/S.
Bankruptcy No. 91–5047–RMV–7A.
Adv. No. 93–0114.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 7, 1995.

Joseph H. Yeager, Jr., Baker & Daniels, Indianapolis, IN, for Merchants Grain, Inc.

J. Anthony Logan, Dublin, OH, for Mark Atkins, Chris Atkins, Charles Dresbach & Son, Gary Graham, John Perry, Larry Starling, Linda Andrews, Larry Augenstein, Robert Belt, Candlehill Farm, Jim Clark, Larry Ellinger, Farmers Nat. Co., Guy Geiger, J.E. Geiger, Andrew Green, E. Kenneth Hadden, Matthew Hoover, David Jackson, Tom Jennings, Randy Longshore, Jack McCabe, John McKitrick, McKitrick Properties, Gary Miller, PFK, Inc., James E. Paxton, Mary Lou Piper, RADCO, John E. Scott, Roy Speak-

man, Richard L. Stockberger, Robert Thomas, William Thomas, Jr., Warrington Farms, Way View Farms Inc., West Farms, Hans Wooster, Earl Yutzy, Ralph Murphy, Robert Bieber, Steve Bowling, Jeff Chattin, Walter Durrett, Jeff Ehman, Raymond Fling, Eugene Hupp, J & K Farms, Robert L. Mitchell, Linda Newell, Allan Piper, Dwight Piper, Edna Reiselt, Kenneth Sanders, Wilmer Schrock, Howard Siegrist, Walter Starkey, Mike Tickson, Matilda Totten, John Trapp, Reed Westervelt, Jeff Williams, Grey Yutzy, Robert Thomas, William Thomas, Jr., John Bauder, Bethel Road Investments Inc., Kenny Brandel, Ken Buell, Jacob Caldwell Heirs, Delbert Crook Jr., D & C Enterprises, Dawson Farm, Doug Dawson, Dean Dematteo, Chris Dematteo, Beverly Evans, Robert Fuller, Mary Hoffman, Carl Hunsinger, John Jahn, John F. Lane, Clarence Mauger, Allen Miller, Edwin Miller, Mitchagri, James Mitchell, Jr., Robert Carl Mitchell, Richard Montgomery, Doug Mulpas, P & C Farms, Vance Parkinson, River City Farm Supply, John G. Roby, James Rogers, Rick Ross, Scioto Valley Farms Inc., Sharp Bros., Gene Smart, Steve Smith, Snell Bros., Dave Thomas, Walnut Creek Farms, Walnut View Farms, Steve Weber.

John Perry, pro se.

Robert Thomas, pro se.

William Thomas Jr., pro se.

Brian Shonk, Lancaster, OH, for Phil Leitnaker, Phill Leitnaker Farm, Steve Pontius, Marvin Eyman, William Hunzicker, Mrs. Forrest Lones, Fred L. Lones, Jerry Miller, Edgar Willey, Roger Wiseman, M.E. Detwiler, Edwin Helser, David Kilbarger, Kilbarger Farms, Tom Leitnaker, Tom Leinaker Farm, Falers Feed Store Inc., Kennedy Farms, Edwin Miller, Wilma Miller, Ruth Shank.

Dave Shade, Delaware, OH, for Ohiogro Inc., Larry Kuhlwein, Ohiogro South, Neil Rammelsberg, Ted Foreman, Freda Krohn.

John Timmons, pro se.

John Street, Chillicothe, OH, for Herron Farms.

Rankin Gibson, Columbus, OH, for Rene Schreck, Jim O'Hara, Greg Schreck, Vernon Tharp, Clair Zimmerman, Rankin Gibson.

Richard T. Ricketts, Ricketts & Onda Co., Columbus, OH, for Dick Brenner, Jack Jahn, Jim Jahn, Dean Pontius, Robert Reelhorn, Myrtle Sawyer, Marvin A. Yutzy, Cy Cupp, Dr. William Krauss, Tom Lamp, Barbara Lamp, Lamp Family Farms, Ralph E. Miller, Marjorie Rayner, Rayner Farms, Judy Reelhorn, Carolyn Shaw, Timmons Heirs, Mrs. Prior Timmons, Jay Writsel, Marlin Yutzy, Howard Delamatre, Richwood Banking Co., J & J Partnership.

William B. Logan Jr., Luper Wolinetz Sheriff & Neidenthal, Columbus, OH, for Ohio Agricultural Fund, Ohio Commodity Com'n.

Cheryl Minsterman, Asst. Ohio Atty. Gen., Dept. of Agriculture, Reynoldsburg, OH, for Ohio Dept. of Agriculture.

Glen Elfrink, pro se.

Jason D. Jordan, Anderson, IN, for Keith J. Quick.

Jack Utzinger, pro se.

Scott Dever, pro se.

## ORDER

McKINNEY, District Judge.

Plaintiff Edmund M. Mahern ("Trustee"), Trustee of Merchants Grain, Inc. ("MGI"), appeals from a decision of the Bankruptcy Court in which that Court found against him in his effort to set aside allegedly preferential transfers. Defendants below are customers of MGI of Columbus, Ohio, who entered into delayed price agreements with MGI and who received payments from MGI less than ninety days prior to the filing of MGI's bankruptcy. The Ohio Agricultural Commodity Fund and the Ohio Commodity Advisory Commission have intervened in this matter and are appellees, as well as are the individual customers. The Trustee for MGI filed an adversarial complaint in the Bankruptcy Court for the avoidance of preferential transfers pursuant to § 547 of the Bankruptcy Code. This appeal stems from the summary judgment ruling by the Bankruptcy Court adverse to the Trustee.

## I. STANDARDS

In reviewing a decision of the bankruptcy court, the district court acts as an appellate tribunal and is governed by traditional standards of appellate review. Specifically, the Court "is constrained to accept the bankruptcy court's findings of facts unless they are clearly erroneous." *In re Excalibur Auto Corp.*, 859 F.2d 454, 457, n. 3 (7th Cir.1988); *In re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988). "A finding is clearly erroneous if upon review of the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Graham v. Lennington*, 74 B.R. 963, 965 (S.D.Ind.1987). "Generally, as long as the bankruptcy judge's inferences are reasonable and supported by the evidence, they will not be disturbed." *Id.*

Conclusions of law made by the bankruptcy court, however, must be reviewed *de novo*. *Excalibur Auto Corp.*, 859 F.2d at 457, n. 3; *Longardner & Associates, Inc.*, 855 F.2d at 459; *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989). And, where the challenged finding is a mixture of law and fact, the clearly erroneous standard is also inapplicable. *Graham*, 74 B.R. at 965. With these general standards at hand, the issues raised can be addressed.

## II. DISCUSSION

The Bankruptcy Court has found, and no one disputes, that MGI owned and operated grain storage facilities in six different states. The Ohio facility located in Columbus, Ohio, is the focus of this action. Resolving this matter involves examining the Ohio statutes that provide the means for dealing with failing or failed grain dealers. That comprehensive statutory scheme was undoubtedly designed to protect Ohio farmers from the consequences of dealing with a poorly managed grain elevator. An important issue in this case is whether Ohio's attempt to solve this problem is in reality an effort to distribute the assets of an insolvent grain dealer to farmer creditors, which effort would be superseded by federal bankruptcy law. *Emil v. Hanley*, 318 U.S. 515, 63 S.Ct. 687, 87 L.Ed. 954 (1943); *Taylor v. Sternberg*, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599 (1935).

A crucial section of that Ohio law is § 926.021(B) which states as follows:

> A lien shall exist on all agricultural commodity assets of a failed agricultural commodity handler in favor of any of the following: (1) Claimants, including lenders, who possess receipts covering grain owned or stored by the handler; (2) Claimants who possess written evidence of ownership other than a receipt disclosing a storage obligation of the handler, including tickets; (3) Claimants who surrendered receipts as part of an agricultural commodity sales transaction but were not fully paid for the agricultural commodity and the handler failed within twenty days after the surrender; (4) Claimants who possess any other written evidence of the sale of agricultural commodities to the failed handler for which they were not fully paid.

The statute goes on to say that:

> The lien which shall secure all claims described in division (D) of this section, **shall arise at the time of the delivery of the agricultural commodity for sale, commencement of the storage obligation, or when funds are advanced by the lender, and shall terminate when the liability of the agricultural commodity handler to the claimant is discharged....**

Ohio Revised Code ("O.R.C.") § 926.021(C) (emphasis added).

The appellees in this matter, the individual farmers (the "Farmers"), are all holders of delayed price contracts. The delayed price contract itself says:

> The fixing of the price of grain is deferred, and may be established by seller at any time, but not later than _____, and upon demand by seller, the buyer is obligated to pay his regular bid price upon the date of demand for the commodities being priced by the seller. If no such notice is given by seller by the date established in the preceding sentence, the buyer's offered price on that date shall control and the buyer shall promptly give seller written notice of that price, unless a renewal has been written prior to the above expiration date covering the same grain

covered by this contract and agreed upon by both buyer and seller.

The agreements also contain the crucial language that in various and sundry wordings, depending on the contract, the Farmer

fully understand(s) that upon delivery I am transferring title to the Merchants Grain & Transportation and become a creditor of the Merchants Grain & Transportation for the market value of commodities so delivered until the price is established and settlement is completed. If the Merchants Grain & Transportation defaults in its obligation for settlement, I am a common creditor of the Merchants Grain & Transportation for the value of commodities not settled for.

Thus the Farmers by contract agreed that by contracting for a delayed price with MGI they would be considered as common creditors. They also agreed that Merchants Grain & Transportation would own the grain at the time of its delivery to MGI.

■ The Ohio statute, however, extends the sellers' rights beyond those conferred upon them by the delayed price contract. The statutory scheme gives the Farmer a lien, arising on the date of delivery of the grain, on all the agricultural commodity assets of a failed agricultural commodity handler. Agricultural commodities are defined to include all grains that are deposited with the handler. O.R.C. § 926.02. An agricultural commodity handler is defined in § 926.01(C) as: "any person who is engaged in the business of agricultural commodity handling." Applying simple principles of statutory interpretation indicates that the statute grants to the Farmers, upon their delivery of grain to MGI, and in spite of the acknowledgement in the contract of the Farmers' status as common creditors, a statutory lien on the grain that they deposited as of the date of the deposit.

As long as the elevator is solvent matters will go smoothly. If, however, statutory financial requirements are not met, the Ohio Director of Agriculture (the "Director") may refuse to grant, or may conditionally suspend, a handler's license. These financial requirements are stricter than the federal notion of bankruptcy. That is, grain dealers will be in trouble with the state regulators long before their debts exceed their assets. *See* O.R.C. § 926.06(B); O.R.C. § 926.10.

In this case, the MGI facility in Ohio fell below the statutory financial standard. As the court below found, under O.R.C. § 926.06(B) MGI was required to have a positive current net worth and a total net worth of at least $300,000.00 to be in compliance. The Ohio Department of Agriculture (the "Department") determined, after review of MGI's financial records, the existence of a current net worth deficiency of over $6,000,-000.00. After some correspondence between the Department and MGI, the Director conditionally suspended MGI's Ohio agricultural commodity handler's license on November 8, 1990. For the next two months, the Department allowed MGI to continue to operate, but increased its oversight of the troubled commodity handler. After the Department learned that MGI had written an insufficient-funds check to the federal government, it began a full examination of the debtor's grain records and inventories.

As of January 7, 1991, the Director advised MGI that its license was immediately suspended. Following that unconditional suspension the Department and MGI began negotiations toward a settlement agreement, which would allow MGI to make good on its agreements with the depositing Farmers. Such an agreement was reached in January, 1991, which benefitted the appellees in this case, although the agreement was not formally executed until May 8, 1991. Under the terms of that agreement MGI was able to continue in business, selling some 975,000 bushels of grain. The funds realized from those sales were deposited in one of three joint escrow accounts held by Star Bank, an Ohio banking institution, where they earned interest. In order for a check to issue from one of the three joint escrow accounts, it had to be signed by both the Department and MGI.

In the process of implementing the settlement agreement, the Department reached an agreement with the delayed price contract depositors concerning negotiated prices that reflected the current market price. In addi-

tion, the Department verified the number of bushels attributable to each depositor and the amount of money owing to each. The grain depositors were paid the negotiated price from the proceeds of MGI's sale of grain, which had been deposited in the joint escrow accounts.

MGI filed for bankruptcy on May 9, 1991, which established the "petition date" for purposes of § 547(b)(4) of the Bankruptcy Code. At certain times within ninety days of the petition date, the Farmers received payoffs of their claims under the deferred payment contracts. The original complaint in this matter was filed by the Trustee in order to avoid those transfers and to bring the amounts of money transferred back into the bankrupt estate. At issue is whether the statutory scheme that enabled the Department to direct the above-described transaction, constitutes an attempt by Ohio to distribute the assets of an insolvent grain dealer in violation of the policies behind federal bankruptcy law. If that is the case, then the transfers of money from the escrow accounts within ninety days of the petition date would be considered preferential transfers and would be subject to avoidance by the Trustee.

Section 547(b) of the Bankruptcy Code provides as follows:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property— (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made—(A) on or within 90 days before the date of the filing of a petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under Chapter 7 of this Title [11 U.S.C. §§ 701 et seq.]; (B) the transfer had not been made; and, (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.S.C. § 101 et seq.].

The Farmers wish to focus the Court's attention on the first clause of this section, arguing that the transfer of funds from the state-operated MGI to them was not a transfer "of an interest of the debtor in property." Their position is that despite the delayed pricing contracts' explicit statement that MGI owns the grain in question, the parties contracted against the backdrop of the Ohio statutory scheme. That scheme specifically enlarged the Farmers' rights to include a lien on the agricultural commodity assets of MGI.

By granting a lien to grain depositors, which arises at the time of delivery of the agricultural commodity for sale or commencement of the storage obligation, the Ohio statute removes the grain and its proceeds from consideration as property of the debtor. This is so because "property of the debtor" has been defined as that property that would be available to the debtor for distribution to creditors in a bankruptcy proceeding. *Begier v. Internal Revenue Service,* 496 U.S. 53, 57–60, 110 S.Ct. 2258, 2262–63, 110 L.Ed.2d 46 (1990); *In re Bullion Reserve of North America,* 836 F.2d 1214, 1217 (9th Cir.1988).

By definition, a lien is an encumbrance on property for the payment of some obligation, or performance of a duty. Black's Law Dictionary, Sixth Ed. Consequently, the possessor of the encumbered property enjoys less than full ownership rights in such property. That is because "[l]iens are property rights and the forfeiture of such rights is disfavored." *In re Penrod,* 50 F.3d 459, 462 (7th Cir.1995); *see* 11 U.S.C. § 101(37) (a lien is an interest in property). It follows, then, that property to which a lien is attached is not property available to a debtor for distribution to creditors generally in a bankruptcy proceeding. *See Penrod,* 50 F.3d at 463 (at the start of a bankruptcy proceeding, liens of secured creditors are not the debtor's property).

The Trustee, on the other hand, argues that this lien is not valid because it could be avoided under § 545(1) of the Bankruptcy Code, thereby making the payments which went to the Farmers payments on

unsecured debts. The Bankruptcy Code section on which the Trustee relies provides that

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> (1) first becomes effective against the debtor—
>
>> (A) when a case under this title concerning the debtor is commenced;
>>
>> (B) when an insolvency proceeding other than under this title concerning the debtor is commenced;
>>
>> (C) when a custodian is appointed or authorized to take or takes possession;
>>
>> (D) when the debtor becomes insolvent;
>>
>> (E) when the debtor's financial condition fails to meet a specified standard; or
>>
>> (F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;

11 U.S.C. § 545(1). The question, of course, is whether the Ohio statutory lien becomes effective against the debtor when an insolvency proceeding concerning the debtor is commenced, or when the debtor becomes insolvent, or when the debtor's financial condition deteriorates to a specified level.

The Trustee argues that the Ohio statute describes the existence of the lien only in the context of a "failed" agricultural commodity handler, and concludes from that reference that the lien becomes effective upon the insolvency or other financial deterioration of the debtor's business. In support of this argument, the Trustee refers to the definition of "failure" in the Ohio statute. Failure is defined as including the inability to financially satisfy claimants, a public declaration of insolvency, the revocation of the commodity handler's license when it owes money to claimants, or other circumstances relating to maintaining a valid license. O.R.C. § 926.021(A)(2). However, inferring that the legislature meant the lien to arise only when the commodity handler becomes financially distressed would not be reasonable, because it would render a more specific portion of the statute superfluous. Moreover, fundamental principles of statutory construction require that the more specific provision takes precedence over the more general. *See Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 524, 109 S.Ct. 1981, 1992, 104 L.Ed.2d 557 (1989).

The Ohio statutory scheme specifically states that the lien becomes effective at the time of the delivery of the grain to the grain handler. O.R.C. § 926.021(C). It also goes on to say, "In the event of a failure, the director of agriculture shall enforce the lien claims and allocate the proceeds...." O.R.C. § 926.021(D). This more specific delineation of the inception of the statutory lien takes precedence over any general reference to a lien coming into existence when the commodity handler has failed.

The statute also specifically denotes when the lien ceases to exist. The statutory lien is extinguished upon the payment of the obligation to the depositor. The Ohio statutory scheme is unlike any other scheme from any other state cited by the Trustee. By statute, the State of Ohio gives a lien to the grain depositor that arises from the time the grain is placed in the elevator and is extinguished at one of two times, either after the grain elevator operator falls below the prescribed financial standard and the claim is paid through the Department of Agriculture, or at the time the elevator operator pays the depositor.

In this Court's view, the Ohio statutory lien is not voidable under § 545(1) of the Bankruptcy Code, because it becomes effective at the time the grain is deposited rather than at the time the insolvency is suspected. The Ohio statutory scheme is quite different from the scheme in Illinois cited in *Gorenz v. State of Illinois Dep't of Agriculture,* 653 F.2d 1179 (7th Cir.1981).

In that case, acting pursuant to Illinois Revised Statute, Chapter 127, § 40.23 (1979), the Illinois Department of Agriculture seized grain in the possession of John Gorenz and subsequently sold the grain and retained the proceeds of the sale. The trustee attempted to avoid those transfers and bring the resultant $38,000.00 back into the bankruptcy estate. Section 40.23 gives the Illinois Department of Agriculture the power:

> To control surety bonds and trust funds and to establish trust accounts and bank

accounts in adequately protected financial institutions, to hold monies received by the Director of Agriculture when acting as trustee, to protect the assets of licensees for the benefit of claimants, to collect and disburse the proceeds of such bonds and trust funds when acting as trustee on behalf of claimants without responsibility for the management and operation of discontinued or insolvent businesses, such funds or additions thereto in which the state of Illinois has no right, title or interest.

The bankruptcy court and the district court in *Gorenz* held that the Department was required to surrender the proceeds of the grain sale to the trustee. The appellate court overturned that decision, finding insufficient evidence of the ownership of the grain that was seized. If the bankrupt was found to own the grain, the Department could not resist the jurisdiction of the bankruptcy court, because the action of the State of Illinois would have been an attempt to distribute assets of an insolvent grain dealer to farmer creditors and would thus be superseded by federal bankruptcy proceedings.

In the case before this Court, however, even though the contracts seem to indicate that the owner of the deposited grain is MGI, the State of Ohio impressed a statutory lien upon that property, which removes it from a bankruptcy consideration as "property of the debtor." The point is, the deposited grain was not wholly the property of the debtor under Ohio law. This finding would be true regardless of whether there was a bankruptcy proceeding pending.

The State of Ohio selected this method by which to protect its farmers from financially troubled warehousers. It has done so in a different fashion than did the State of Illinois. Illinois impressed no liens upon the grain, and the liens at issue here are not avoidable by the trustee pursuant to the very language of the Bankruptcy Code. The Bankruptcy Court was therefore correct in its assessment and in its denial of the Trustee's complaint for avoidance of preferential transfers. If the Ohio statute had provided that the lien arose on the event of financial difficulty, this case would be different.

The reasoning of *In re Loretto Winery Limited*, 898 F.2d 715 (9th Cir.1990), is similar to that used in this matter. Therein a statutory lien was upheld against the trustee's attack, which lien arose on the delivery of product to the processor. The California and the Ohio statutes are based on very similar policies. As in the situation in which a mechanics lien arises, the farmer has applied his labor and resources to produce the product that then increased the value of the debtor's estate. This places the farmer in a different class than general creditors, who have only a pecuniary interest in the estate. To allow general creditors to share equally with the farmers in the estate would unjustly enrich the general creditors at the expense of the farmer's labor. Consequently, the California and Ohio legislatures have successfully endeavored to place the farmers in a different class of creditors than the general creditors, which is a class analogous to secured creditors.

■■ The Trustee also argued that the Ohio statutory lien is avoidable pursuant to § 545(2), which provides that:

> The trustee may avoid the fixing of the statutory lien on property of the debtor to the extent that such lien—
>
> (2) is not perfected or enforceable *at the time of the commencement of the case* against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists

5 U.S.C. § 545(2) (emphasis added). The statutory lien at issue, however, did not exist at the time of the filing of this bankruptcy, because the claims secured by the lien were already extinguished.

■■ In addition, a statutory lien in Ohio is exempted from the requirement of perfection otherwise required by the Ohio version of the Uniform Commercial Code. Likewise, this lien is not the traditional "secret" lien that is not protected by the law. This Court agrees with the Farmers' argument that this lien has been created by the Ohio General Assembly and is a matter of public record. Because these liens are common in the agricultural industry, those in the industry would be aware of their existence. Any creditors

who do business with the debtor would most likely be involved in regular business activity with the grain industry, and consequently they would know of the Ohio statutory lien. And even if they did not, they would be bound by the laws of the states in which they do business, so that a bona fide purchaser in this context would have knowledge, or be chargeable with knowledge of the statute.

For all these reasons, the opinion of the Bankruptcy Court that these transfers may not be avoided as preferential transfers by the Trustee is **UPHELD.**

IT IS SO ORDERED.